[No. B072574. Second Dist., Div. Three. Aug. 31, 1993.]

ADA SOLORZANO et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
FAMILY HEALTH PLAN, INC., Real Party in Interest.

COUNSEL

Bet Tzedek, Kurt Eggert, Morrison & Foerster, Joseph C. Markowitz, Tamara L. Joseph, Richard W. Grime and Alexander B. Trueblood for Petitioners.

Ian Herzog, Amy Ardell, Douglas Devries, Roland Wrinkle, Harvey Levine, Robert Steinberg, Thomas Stolpman, Bruce Broillet, Gary Paul, Leonard Sacks, David Rosen, Muegenburg, Norman & Dowler, Peter O. Israel, Kenneth W. Babcock, Steven A. Nissen, Toby J. Rothschild and David Salisbury as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Rushfeldt, Shelley & Drake, Randall L. Shelley, Stacy L. Raphael, Greines, Martin, Stein & Richland and Timothy T. Coates for Real Party in Interest.

## OPINION

**KLEIN, P. J.**—Petitioners Ada Solorzano, America Rodriguez and Dolores Morales (plaintiffs) filed suit against defendant and respondent Family Health Plan (FHP) alleging, inter alia, FHP engaged in unfair business practices and misleading advertising in the solicitation of subscribers to its senior plan. Plaintiffs brought suit on these theories in their individual capacities and on behalf of the general public. (See Bus. & Prof. Code, §§ 17204, 17535.) Plaintiffs are proceeding in forma pauperis in the trial court and before this court.

In the course of pretrial proceedings, the trial court appointed a privately compensated discovery referee and ordered plaintiffs and FHP to share equally in the payment of the referee's $300-per-hour fee. Plaintiffs seek a writ of mandate directing the trial court to vacate that order and to issue a new order relieving plaintiffs of the obligation to pay the referee's fees. We issued an order to show cause why a peremptory writ of mandate granting the relief requested should not issue.

Code of Civil Procedure sections 639 and 645.1 enable the trial court to utilize private referees to resolve discovery disputes, inter alia, between litigants.[1] Section 645.1 requires the trial court to apportion the fees paid by the parties to privately compensated discovery referees in a "fair and reasonable" manner.

[1] All subsequent statutory references are to the Code of Civil Procedure, unless otherwise indicated.

Section 639 states, in pertinent part: "When the parties do not consent, the court may, upon the application of any party, or on its own motion, direct a reference in the following cases: [¶] . . . [¶] (e) When the court in any pending action determines in its discretion that it is necessary for the court to appoint a referee to hear and determine any and all discovery

Because the indigent status of the plaintiffs precluded the trial court from achieving a fair and reasonable allocation of referee fees, the trial court's reliance on section 645.1 in the circumstances of this case was misplaced. The failure of the trial court to consider alternative means by which the discovery dispute could be resolved constitutes an abuse of its discretion. Accordingly, the petition is granted.

In view of the several possible resolutions available which do not require plaintiffs to pay for the services of a private discovery referee, we remand to the trial court to exercise its discretion in a reasonable manner.

### Factual and Procedural Background

The named plaintiffs are elderly Spanish-speaking individuals who receive Medi-Cal and Medicare. FHP offers a "Senior Plan" under which a member's Medi-Cal and Medicare benefits are assigned to FHP. In June 1991, plaintiffs, on their own behalf and for the general public, filed this action alleging FHP sales agents improperly induced elderly persons to enroll in the Senior Plan. The complaint alleged FHP's agents falsely and improperly (1) told plaintiffs they could continue to be treated by their present private physicians for a nominal additional charge, (2) assured plaintiffs FHP is affiliated with the federal government, and (3) stated the federal government is seeking to reduce the use of private doctors.

Plaintiffs seek injunctive relief and compensatory and punitive damages. Plaintiffs are represented by a public interest organization and a private law firm serving pro bono publico.

In the course of discovery plaintiffs requested production of, among other things: (1) the records of FHP's contacts with state and federal agencies; (2) documents identifying FHP sales agents, FHP's promotional, marketing, and training materials; and (3) documents identifying all similar complaints from other FHP enrollees. FHP declined to produce any documents that did not relate specifically to the three named plaintiffs.

In response to plaintiffs' motion to compel production, the trial court appointed discovery referee William F. Powers (Referee Powers) on January 7, 1992, and ordered each side to advance its share of the fees "unless the

---

motions and disputes relevant to discovery in the action and to report findings and make a recommendation thereon."

Section 645.1 states: "The court may order the parties to pay the fees of referees who are not employees or officers of the court at the time of appointment, as fixed pursuant to Section 1023, in any manner determined by the court to be *fair and reasonable*, including apportionment of the fees among the parties." (Italics added.)

Section 1023 states: "The fees of referees are such reasonable sum as the court may fix for the time spent in the business of the reference; . . ."

referee shall otherwise direct, . . ." Although there is no available reporter's transcript of this hearing, FHP concedes plaintiffs objected to the appointment of Referee Powers at the time of the hearing on the ground they were indigent and could not pay his hourly fee.

By letter dated January 14, 1992, Referee Powers advised the parties his fees of $200 per hour would be charged equally to each side absent a showing of good cause for some other allocation. Plaintiffs advised Referee Powers of their indigent status by letters dated January 23, and 30, 1992, and requested deferral of any fee assessment until the ruling on the motion to compel. Referee Powers denied the request.

On January 31, 1992, the public interest organization representing plaintiffs sent Referee Powers a check for his retainer in the amount of $500.

At a hearing on February 4, 1992, Referee Powers temporarily stayed discovery as to all but the three-named plaintiffs and requested further briefing as to the private attorney general allegations.

On February 26, 1992, each of the three-named plaintiffs sought and received from the court in forma pauperis status.

On March 3, 1992, plaintiffs received a bill from Referee Powers requesting payment of $1,490 in addition to the $500 retainer. Plaintiffs were sent additional invoices in the total amount of $420.

On March 12, 1992, Referee Powers issued a written recommendation suggesting all discovery be stayed pending determination of FHP's petition for writ of mandate in the Court of Appeal, which raised jurisdictional issues of federal preemption. Referee Powers excepted from the stay any discovery relevant to the named plaintiffs. As to the stayed discovery, Referee Powers suggested the plaintiffs' request for production infringed the right of privacy of FHP's patients and violated the physician-patient privilege. Referee Powers also noted "the current dispute in this case has been brought about to a substantial extent by plaintiffs' dogged persistence in defending one set of requests for production. Much of that energy would have been better directed, in my opinion, towards narrowing and clarifying those discovery requests and exploring other discovery alternatives available to them to get to the information to which they may be entitled."

Thereafter, Referee Powers and plaintiffs exchanged several letters respecting the plaintiffs' failure to pay the fees as invoiced.

In the interim, by letter dated April 7, 1982, the Judicial Arbitration and Mediation Services (JAMS) advised plaintiffs it would provide a discovery referee at no cost to either party.

At a hearing on April 17, 1992, plaintiffs sought to bring this offer to the attention of the trial court, and to request relief from the obligation to pay referee fees. However, that hearing resulted in the transfer of the matter for a determination of whether the case should be treated as a class action.

Thereafter, in the course of writ proceedings, on November 2, 1992, Division One of this court determined the claims stated in the complaint were not preempted by federal law. (*Solorzano* v. *Superior Court* (1992) 10 Cal.App.4th 1135 [13 Cal.Rptr.2d 161].)

On November 18, 1992, the matter of plaintiffs' responsibility for payment of referee fees was heard again by the trial court. At that hearing the plaintiffs reasserted their indigency and suggested the parties submit the matter to arbitration in a JAMS pro bono program.

FHP objected on the ground plaintiffs had contacted JAMS ex parte and FHP suspected a potential bias. Additionally, FHP believed the payment of referee fees necessarily would limit what it perceived as discovery abuse on the part of the plaintiffs. FHP's counsel stated: "They are hoping to open up FHP files, thousands of witnesses. The only restraint on that is if they know they have to pay as they go."

 ██ The trial court stated it could not refer the matter to JAMS unless both sides agreed.[2] FHP requested the continued services of Referee Powers and offered "to retain [Powers] who spent all the time so far."

The trial court stated, based upon the letters from Referee Powers to plaintiffs and to the trial court regarding the past due fees, it believed "it would be appropriate to get a fresh person."[3] The trial court then appointed L. Thaxton Hanson (Referee Hanson) to hear the dispute and indicated Referee Hanson charged $300 per hour to resolve such matters. When counsel for plaintiffs again pointed out the plaintiffs' indigent status, the trial court stated: "Fees are not going to be waived. If you are going to litigate, you are going to pay."

---

[2]The trial court's assessment of its power to appoint a referee over the objection of a party was incorrect. Under section 639, subdivision (e), the consent of the parties to the specific referee is not required. (See, fn. 1, *ante*.)

We note the California Rules of Court adopted by the Judicial Council effective July 1, 1993, modifies to some extent the power of the trial court to appoint a referee. Rule 244.2(b) applicable to superior courts, and rule 532.2(b) applicable to municipal courts, provide: "In selecting the referee, the court shall accept nominations from the parties and provide a sufficient number of names so that the parties may choose the referee by agreement or elimination. The parties may waive this procedure by a waiver noted in the minutes. The name of the referee shall be stated in the order of reference."

[3]Referee Powers wrote to the trial court he believed his services had been "secured under false pretenses or with no intent to pay therefor."

Plaintiffs aver they were advised by Referee Hanson's clerk his fees are $300 per hour to be split equally between the parties.

## CONTENTIONS

Plaintiffs contend the requirement they pay a referee to resolve discovery disputes denies them meaningful access to the courts and violates their rights to equal protection and due process.

FHP responds, inter alia, plaintiffs should be estopped from seeking free discovery based on their conduct before the trial court. FHP also argues plaintiffs are not "involuntary participants" in this litigation and the discovery dispute has been caused by the plaintiffs' inclusion of private attorney general theories of recovery which FHP should not have to finance.

## DISCUSSION

### 1. *The plaintiffs' constitutional assertions.*

Plaintiffs argue the imposition of discovery referee fees on indigent litigants in the present context violates public policy and settled principles of constitutional law. They claim the trial court's order inhibits access to the courts and impermissibly infringes the rights to counsel, equal protection and due process. Plaintiffs further allege the requirement that plaintiffs pay such fees rewards FHP for its abuse of the discovery process.[4]

All amici curiae have sided with plaintiffs.[5] They stress the importance of discovery in complex litigation and the need for resolution of such disputes without cost to indigent litigants. They argue pro bono counsel and public interest legal organizations will be forced to absorb substantial discovery fees, and may decline representation of the poor in cases where there is a likelihood of contentious discovery disputes.

---

[4]Plaintiffs assert, in addition to the original discovery dispute, there is now pending (1) FHP's motion to compel plaintiffs to submit to mental examinations, (2) FHP's motion to quash service of a deposition notice, and (3) plaintiffs' motion to compel one of FHP's sales agents to answer deposition questions. Plaintiffs claim additional discovery disputes will arise because FHP has failed to respond to plaintiffs' second request for production of documents and has refused to produce three witnesses for deposition.

[5]The following organizations have submitted amicus curiae briefs: Public Counsel, Los Angeles; Los Angeles County Bar Association; Legal Aid Foundation of Long Beach; California Trial Lawyers Association.

2. *FHP's response and estoppel claims.*

 a. *FHP's argument plaintiffs are not "involuntary participants" unavailing.*

■ FHP does not dispute the principles of law relied upon by plaintiffs. However, FHP argues plaintiffs are not "involuntary participants" in litigation like the indigent petitioner in *Boddie* v. *Connecticut* (1971) 401 U.S. 371, 389 [28 L.Ed.2d 113, 125-126, 91 S.Ct. 780], who had to pay a filing fee in order to obtain a divorce, and thus was entitled to avoid payment of court costs and fees. FHP asserts the right of access to the courts is not absolute. (See *Ortwein* v. *Schwab* (1973) 410 U.S. 656 [35 L.Ed.2d 572, 93 S.Ct. 1172] [fee required for appeal of denial of welfare benefits is rationally related to state's goal of offsetting operating costs]; *United States* v. *Kras* (1973) 409 U.S. 434, 445-446 [34 L.Ed.2d 626, 635-637, 93 S.Ct. 631] [indigent not entitled to waiver of bankruptcy filing fee because bankruptcy not the sole means by which to reach agreement with a creditor].)

FHP points out plaintiffs not only filed the lawsuit against FHP as individuals but also, on a private attorney general theory, seek to uphold the rights of the People of the State of California. FHP contends this broad attempt to vindicate the rights of the general public inevitably will lead to discovery disputes which FHP should not be required to finance. FHP argues plaintiffs have "inflate[d] a routine tort action into a quasi-class action" and cannot complain at the added financial burden it entails.

We agree FHP should not be forced to finance resolution of these discovery disputes. However, it does not follow that plaintiffs should be prevented from prosecuting this lawsuit merely because they are indigent, voluntary plaintiffs seeking redress for themselves and others similarly situated. Rather, as discussed more fully below, the trial court cannot, on the present record, rely on the statutory assistance of section 639, subdivision (e), and section 645.1.

 b. *Estoppel argument unavailing.*

■ FHP contends plaintiffs should be estopped from asserting entitlement of free resolution of discovery disputes because they did not seek writ relief from the original order appointing Referee Powers, they paid the $500 deposit without reservation of a right not to pay further fees, and plaintiffs filed the motion to be relieved of the duty to pay the fees only after they had received an indication of an adverse recommendation from Referee Powers.

FHP argues plaintiffs never advised Referee Powers they had been granted in forma pauperis status or that they did not intend to pay him. Further, FHP contends plaintiffs did not advise the trial court they intended to seek review of the order appointing Referee Hanson, and did not inform Referee Hanson of this writ petition until after counsel for FHP discussed the writ with plaintiffs. Even then, plaintiffs indicated they would abide by the order of November 18, 1992, appointing Referee Hanson and did not request a continuance of the hearing date set before Referee Hanson. For all these reasons, FHP argues plaintiffs should be estopped from seeking relief from the trial court's order.

FHP's estoppel argument fails because the record discloses what amounted to an initial and continuing objection to the payment of referee fees. Moreover, an earlier request for relief may well have been moot in that Referee Powers had not yet assessed fees to be paid by plaintiffs. That is, Referee Powers might have allocated fees differently than the indicated equal division.

Nor are we persuaded by FHP's assertion plaintiffs sought the instant writ in order to avoid the recommendation of Referee Powers. Referee Powers was removed by the trial court as a result of the acrimony engendered by the fee dispute.

3. *The trial court abused its discretion by its discovery order.*

a. *Privately compensated referees unavailable to the trial court here.*

Numerous federal and state cases have established the right of indigent litigants to avoid the payment of various court costs and fees which otherwise would prevent meaningful access to the courts.[6]

---

[6](*Boddie* v. *Connecticut, supra,* 401 U.S. at p. 389 [28 L.Ed.2d at pp. 125-126] [filing fee]; *Roberts* v. *LaVallee* (1967) 389 U.S. 40, 42 [19 L.Ed.2d 41, 43-44, 88 S.Ct. 194] [filing fee]; *Conover* v. *Hall* (1974) 11 Cal.3d 842 [114 Cal.Rptr. 642, 523 P.2d 682] [bond requirement for an injunction]; *Isrin* v. *Superior Court* (1965) 63 Cal.2d 153, 155 [45 Cal.Rptr. 320, 403 P.2d 728] [jury fees]; *Mehdi* v. *Superior Court* (1989) 213 Cal.App.3d 1198, 1201 [261 Cal.Rptr. 919] [cost of clerk's transcript for appeal]; *Board of Medical Quality Assurance* v. *Superior Court* (1988) 203 Cal.App.3d 691 [250 Cal.Rptr. 182] [cost of administrative hearing transcript]; *Villa* v. *Superior Court* (1981) 124 Cal.App.3d 1063, 1069 [177 Cal.Rptr. 752] [library fee]; *Roberts* v. *Superior Court* (1968) 264 Cal.App.2d 235 [70 Cal.Rptr. 226] [undertaking]; *Bank of America* v. *Superior Court* (1967) 255 Cal.App.2d 575 [63 Cal.Rptr. 366] [security for costs for nonresident plaintiff].)

In line with this authority, the California Rules of Court list various court fees and costs, without limitation,which are waived for indigents proceeding in forma pauperis.[7]

We recognize the fees in issue here are not *court* fees but fees paid to a *privately compensated* discovery referee. As such, the trial court cannot waive them.

However, no one can deny the indispensibility of discovery in the prosecution of a lawsuit. Further, prior to the addition of subdivision (e) to section 639 and the enactment of section 645.1 in 1981 (Stats. 1981, ch. 299, § 1, p. 1429, § 2, p. 1430), all discovery was "free." Discovery disputes were presided over and resolved by the trial courts.

When the Legislature amended section 639 and enacted section 645.1 in 1981, it obviously intended to give the overburdened trial courts the opportunity to utilize the paid expertise of retired judges in the resolution of complicated, time-consuming discovery disputes. Here, the trial court readily availed itself of that welcomed option. However, in the circumstances of this case, use of those services was inappropriate.

Fees of $200 to $300 per hour charged by privately compensated discovery referees allow affluent litigants to avoid discovery compliance by pricing enforcement of legitimate discovery demands beyond the means of indigent plaintiffs. This advantage based on wealth flows directly from the trial court's order imposing equal division of fees between indigent plaintiffs and an adverse litigant of far superior financial means.

---

[7]Government Code section 68511.3 directs the Judicial Council to adopt "uniform forms and rules of court for litigants . . . (3) for proceeding in forma pauperis at every stage of the proceedings at both the appellate and trial levels of the court system; . . ."

California Rules of Court, rule 985(i), states: "Court fees and costs waived upon granting an application under rule 982(a)(17) [Application for Waiver of Court Fee and Costs] include, but are not limited to, the following: [¶] (1) Clerk's fees for filing papers; [¶] (2) Clerk's fees for reasonably necessary certification and copying; [¶] (3) Clerk's fees for issuance of process and certificates; [¶] (4) Clerk's fees for transmittal of papers; [¶] (5) Court appointed interpreter's fees for parties in small claims actions; [¶] (6) Sheriff's, marshal's and constable's fees . . . ; [¶] (7) Reporter's fees for attendance at hearings and trials held within 60 days of the date of the order granting the application; [¶] (8) The fee for a telephone appearance . . . ."

California Rules of Court, rule 985(j) states: "The court fees and costs that may be waived upon application under rule 982(a)(20) [Application for Waiver of Additional Court Fees and Costs] include: [¶] (1) Jury fees and expenses; [¶] (2) Court appointed interpreter's fees for witnesses; [¶] (3) Witness fees of peace officers whose attendance is reasonably necessary for prosecution or defense of the case; [¶] (4) Reporter's fees for attendance at hearings and trials held more than 60 days after the date of the order granting the application; [¶] (5) Witness fees of court appointed experts; [¶] (6) Other fees or expenses as itemized in the application."

Section 645.1 makes no provision for indigent litigants proceeding in forma pauperis. However, such parties are by definition unable to pay court-ordered reference fees regardless of how they are allocated. That is, no division or allocation of hourly fees for the services of a privately compensated discovery referee that imposes a monetary burden on impecunious litigants can achieve the fair and reasonable goal of section 645.1. Therefore, based on the present record, we conclude section 645.1 does not constitute authority for the trial court to appoint a privately compensated discovery referee to resolve the instant dispute.

### b. *Trial court vigilance needed in other discovery reference orders.*

■ Sections 639 and 645.1 are similarly silent with respect to the dilemma of a party of modest means who does not qualify for the cost protection afforded by proceeding in forma pauperis. Reference to a discovery referee imposes a substantial economic burden on such a party. It is therefore incumbent on trial courts utilizing the relief afforded by these sections to look beyond the benefit realized by the judicial system and consider the economic impact the order of reference will have on the parties. Accordingly, trial courts should review discovery motions carefully to differentiate between those motions that can be retained by the court and those which are appropriate for reference.

The trial court also must avoid the appearance of delegating judicial functions to referees. In *Aetna Life Ins. Co.* v. *Superior Court* (1986) 182 Cal.App.3d 431 [227 Cal.Rptr. 460], the trial court made an order assigning all law and motion summary judgment proceedings to a referee. The referee heard motions for summary judgment and prepared a written report which included findings of fact and conclusions of law. The trial court denied a hearing on the report and adopted the findings of the referee. *Aetna* held the reference order was not authorized by statute and constituted an impermissible delegation of judicial power. In so doing the *Aetna* court observed, "[e]fficiency is not more important than preserving the constitutional integrity of the judicial process." (*Id.*, at p. 437.)

The justice system not only must be fair to all litigants; it must also appear to be so. The increasingly common practice of referring discovery matters, without regard to the financial burdens imposed upon litigants, threatens to undermine both of these goals.

### c. *Plaintiffs' lawsuit on behalf of the general public does not alter the result here.*

■ This case is complicated by the fact the indigent plaintiffs seek to represent the People of the State of California as well as themselves. FHP

suggests the trial court should be permitted to consider this fact in determining an appropriate means by which to resolve the underlying discovery dispute.

The trial court properly may inquire into whether an action has been filed in the name of an indigent, but merely representative plaintiff, for the benefit of nonindigent persons who are jointly or commonly interested in the subject matter of the litigation. (*Isrin* v. *Superior Court, supra,* 63 Cal.2d at p. 156; *Gomez* v. *Superior Court* (1933) 134 Cal.App. 19, 21 [24 P.2d 856], disapproved on another point in *Isrin* v. *Superior Court, supra,* at p. 165.) However, nothing in the present record indicates the named plaintiffs have been enticed into filing a lawsuit solely for their ability to qualify for in forma pauperis status so as to ensure "free" discovery. Rather, the private attorney general cause of action in this case is advanced on behalf of a generally needy class of individuals who receive Medi-Cal and Medicaid benefits.

Based on the present record, the fact the instant indigent plaintiffs are asserting rights on behalf of the People of the State of California does not appear to be a determinative factor. However, in light of our decision to remand with directions to the trial court to frame a new order, it is appropriate for the trial court to consider all relevant factors.

d. *Available discovery sanctions will prevent abuse envisioned by FHP.*

We are similarly unconcerned with FHP's claim "free" resolution of discovery disputes will allow indigent plaintiffs to abuse the discovery system. The discovery laws of this state provide trial courts with numerous efficient weapons to combat discovery abuse by any party. (*Laguna Auto Body* v. *Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 486-488 [282 Cal.Rptr. 530]; § 2023.) We are confident these safeguards will prevent the peril predicted by FHP.

e. *Appropriate alternative discovery orders.*

In their briefs the parties and amici curiae have suggested several options by which the discovery dispute might be resolved. These include a pro bono referee, a retired judge of the superior court sitting by assignment, or retention of the matter by the trial court. Any of these alternatives may be appropriate.

We conclude it is the trial court's responsibility to form a fair means of discovery dispute resolution which takes into consideration the financial status of parties.

## CONCLUSION

 The trial court's order that indigent plaintiffs proceeding in forma pauperis share equally the $300-per-hour charge of a discovery referee fails to consider the impact of such order on the indigent plaintiffs and is not authorized by sections 639 and 645.1. No allocation of such fees can be fair and reasonable in these circumstances. Therefore, such ruling constitutes an abuse of the trial court's discretion.

## DISPOSITION

The petition for writ of mandate is granted. The trial court's order of November 18, 1992, is reversed, and the matter is remanded to the trial court to make whatever new order it deems appropriate, consistent with the views expressed herein.

Croskey, J., and Kitching, J., concurred.