Andrea ROOT, Plaintiff,

v.

Honorable Floyd SCHENK,
et al., Defendants.

No. SA CV 96–604–AHS(EEx).

United States District Court,
C.D. California,
Southern Division.

Jan. 21, 1997.

Michael McEntee, Law Offices of Michael McEntee, Beverly Hills, CA, for plaintiff.

Laurence M. Watson, County Counsel, Karyn J. Driessen, Deputy, Irving Berger, Deputy, Santa Ana, CA, for defendants.

STOTLER, District Judge.

## I.

### PROCEDURAL HISTORY

On August 23, 1996, defendants filed a Motion for Dismissal of Action. On September 17, 1996, plaintiff filed opposition. Defendants filed their reply on October 11, 1996. On October 23, 1996, plaintiff filed Objections to Evidence Offered in Defendant's Reply Brief; Objections to Judicial Notice; Objection [to] Defendant's Request for Intra–Court Comity. Defendants filed a Request to Take Judicial Notice on October 25, 1996. On November 4, 1996, and November 12, 1996, defendants and plaintiff, respectively, filed supplemental briefs. Defendants filed a Reply to Plaintiff's Supplemental Brief on November 18, 1996. The matter was set for hearing on the Court's December 13, 1996, calendar.

On December 11, 1996, the Court took the motion under submission without oral argument.

By this Order, the Court dismisses the action without prejudice because, irrespective of the merits of plaintiff's claims, the ongoing state court action offers an adequate opportunity for raising the same issues as raised in the complaint before the federal court and the issues implicate important state interests.

## II.

### SUMMARY OF COMPLAINT

Plaintiff seeks a declaratory judgment under the Fourteenth Amendment's due process and equal protection clauses and the First Amendment's freedom of speech and of association clauses that Orders dated January 29, 1996, and April 5, 1996, entered in the Orange County Superior be declared null and void and that defendants Judge Schenk and the Orange County Superior Court be enjoined from enforcing the aforesaid orders and enforcement of the "regulation," meaning California's Code of Civil Procedure section 639(e).

Plaintiff is a defendant in an action pending in the Superior Court of Orange County, *Health Industries of America v. Root and Leader,* Case No. 747221, assigned to Judge Floyd H. Schenk. On January 1, 1996, Judge Schenk *sua sponte* entered an order appointing William Sheffield as a referee ("Referee") to perform certain functions as to any and all pending and future discovery motions in the state action. Under the order, the matter is automatically referred to the Referee. Plaintiff allegedly told the Referee not to do anything until she could bring a motion regarding the propriety of the order assigning a referee. The Referee apparently did not wait, ruled against Root, recommended sanctions against her and her counsel, and required that Root pay the Referee's fees. This Order was received by the Superior Court on March 5, 1996. Judge Schenk, with the exception of the amount of the sanction, approved and signed the Referee's report on April 5, 1996.

Plaintiff asserts that the judge abdicated his "fast-track" responsibilities by referring discovery issues to a retired judge whose fees of $4,950.00, ordered to be paid by defendants (one of whom is plaintiff here), reflect the worth of judicial time that should have been spent by the assigned judge on plaintiff's case. Plaintiff says that judges of the Orange County Superior Court are bombarded with a massive marketing device by

retired judges in the private sector to leave the bench and earn similar lucrative fees and are in a conflict of interest position when they refer cases to their former colleagues; the sitting judges now make automatic use of a form order to refer all pending and future discovery motions to a referee without determining if it is appropriate in a particular case. Plaintiff's objections to the procedure and high fees were met with a retaliatory denial and shortened time to pay and comply with the order. Plaintiff further asserts that the California statute authorizing the use of referees, Cal.Code Civ.Proc. § 639, provides no criteria for determining when it is appropriate to appoint a discovery referee. These mandatory and coerced referrals violate due process and equal protection guarantees. It would be futile to seek further review through the California courts, says plaintiff, because the judges there are also subject to the same barrage of overtures to join the private sector and thus the same conflicts of interest. Plaintiff's second cause of action is based on the allegedly erroneous ruling of the superior court which compelled discovery over plaintiff's work-product and attorney-client privilege claims.

## III.

### *SUMMARY OF PARTIES' CONTENTIONS*

#### A. Defendants' Motion for Dismissal of Action

With respect to the Superior Court, defendants argue that the Eleventh Amendment bars suits which seek injunctive relief (or damages, although this is not an issue) against a state, arm of the state, or its agencies, and that the Superior Court is an arm of the state.

With respect to Judge Schenk, defendants argue that under principles of abstention, this action should be dismissed. They argue that this case falls squarely in the test for abstention in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Lebbos v. Judges of the Superior Court*, 883 F.2d 810, 814 (9th Cir.1989), because the state proceedings are ongoing, the state has an important interest in administering the judicial system in such a way that includes alternative dispute resolution, and the litigant was afforded an adequate opportunity to raise her federal claims to Judge Schenk or secure interlocutory review.

Defendants state that United States Judge Gary L. Taylor in this district decided this exact issue in *Griffiths v. Judicial Arbitration & Mediation Services, Inc. ("Griffiths")*, SA CV 93–973 GLT, and held that abstention was appropriate. Defendants urge that, under the rule of intra-court comity, this Court should follow Judge Taylor's decision.

#### B. Plaintiff's Opposition

With respect to defendants' Eleventh Amendment argument, plaintiff argues that the Eleventh Amendment does not bar suit here because federal courts can grant prospective declaratory and injunctive relief against state officials to prevent a continuing violation of the law. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Plaintiff argues that "a federal court has jurisdiction in a suit against a state officer to enjoin official actions violating federal law, even though the state itself may be immune under the Eleventh Amendment." Plaintiff argues that in seeking declaratory and injunctive relief, she asks this Court to prospectively enjoin state officials to conform their conduct to requirements of federal law.

Plaintiff also argues that the Eleventh Amendment only applies to a state and does not impact a political subdivision of a state, such as a county or municipality. *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Plaintiff contends that the Superior Court is a political subdivision of a state and not an "arm of the state" under the test announced in *Mitchell v. Los Angeles Community College District*, 861 F.2d 198 (9th Cir.1988). Plaintiff asks the Court not to follow the Ninth Circuit Court of Appeals' cases holding the Superior Court to be an arm of the state. Plaintiff also argues that even if the Superior Court is an arm of the state, plaintiff should be permitted to proceed by naming all judges of the Orange County Superior Court.

With respect to defendants' abstention argument, plaintiff argues that defendants can-

not establish two of the three requisite elements of the *Younger* abstention doctrine, a state interest, and a fair and unbiased state tribunal. First, she argues that California does not have a compelling state interest in allowing judges to use alternative forms for resolution of discovery disputes and that the state interest in reducing the docket congestion is not a compelling public policy, citing *Aetna Life Ins. Co. v. Superior Court,* 182 Cal.App.3d 431, 227 Cal.Rptr. 460 (1986).

Second, she argues that since there is the appearance of bias in the state proceedings, there is no competent state tribunal and *Younger* abstention is not permitted. The alleged appearance of bias here is Judge Schenk's pecuniary interest in the matter. The public perception of bias is increased by the fact that there are newspaper ads and articles discussing the market for referees and other hired judges. Since Judge Schenk is 73, and approaching retirement, there is a greater appearance of pecuniary interest. Plaintiff queries, "[m]ight a sitting state trial court judge strain to avoid interfering with the retirement nest of their friends, their bretheran, and possibly themselves?"

In addition, plaintiff argues that there is not a fair tribunal because Judge Schenk is the target of personal criticism in this case. Plaintiff argues that the Federal Court must keep its door open to litigants who have "burned their bridges" in state court litigation. Plaintiff argues that she is entitled to a fair tribunal at the trial court level under *Younger,* and that fair appellate review is not enough.

Plaintiff contends that Judge Schenk has already abdicated his judicial responsibilities by making a surprise compelled reference which divided fees equally without making any findings. *DeBlase v. Superior Court,* 41 Cal.App.4th 1279, 49 Cal.Rptr.2d 229 (1996). Later, when adopting the referee's rulings, he allegedly failed to address the constitutional issues raised by Root. Plaintiff also alleges that her motion for disqualification was improperly assigned to a judge (Judge Parkin) by Chief Judge Lucas, who she claims had already retired as Chief Judge and joined JAMS/ENDISPUTE as a private

judge. That motion was denied by Judge Parkin.

In a motion for disqualification heard on June 24, 1996, by Judge Schenk, Judge Schenk stated "it has been litigated.... [Y]ou stand to lose." Opposition at 32. This allegedly shows Judge Schenk's predisposition and bias.

Finally, plaintiff distinguishes the case decided by District Judge Taylor, *Griffiths,* as a preliminary injunction case against JAMS, not judges, who hold no statutory judicial power.

## C. Defendants' Reply

Defendants note that they made the Eleventh Amendment argument only with respect to the Superior Court, and not with respect to Judge Schenk. Defendants also argue that the Court must follow Ninth Circuit authority holding that the Superior Court is an arm of the state, irrespective of plaintiff's disagreement with such authority.

With respect to abstention, defendants argue that plaintiff has not overcome the presumption of honesty and impartiality that this court must afford Judge Schenk. *See Hirsh v. Justices of the Supreme Court,* 67 F.3d 708 (9th Cir.1995) (per curiam). Defendants argue that plaintiff has merely speculated about possible future financial interest, that there is ample authority that plaintiff can urge Judge Schenk to reconsider those rulings with which she is dissatisfied, and if he does not, to seek writ relief in the Court of Appeal.

Defendants point out that Root did not object to a reference, that her counsel only objected to a reference to anyone affiliated with JAMS, and that he did not object to the person ultimately chosen. It was not until such time that plaintiff learned of the result that plaintiff objected. Moreover, the constitutional issues were allegedly not raised in the objections to the Referee's report. Reply at 5 n. 4. In addition, defendants argue that the bad faith argument based on Chief Judge Lucas' assignment of a judge to consider the disqualification motion is without merit because it is based on a letter from the Superior Court's Presiding Judge which er-

roneously stated that it was Chief Justice Lucas who made the assignment, whereas the Judicial Council letter correctly names Chief Justice George as making the assignment.

Defendants argue that the bad faith exception to abstention only applies to law enforcement actions which are undertaken without any reasonable expectation that a valid conviction will result. *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

Defendants contend that plaintiff's reliance on *Aetna Life Ins. Co.* is misguided since in that case the judge found no compelling public policy to ratify a judge's reference to a referee *without* any statutory authority. Here, there is statutory authority.

Finally, defendants ask the Court to take judicial notice of the fact that the *Griffiths* action was against JAMS, Judge Schenk, and the referee to whom Judge Schenk made the reference. Second, Judge Taylor found abstention appropriate for the entire action. For these reasons, intra-court comity applies.

**D. Plaintiff's Objections to Defendants' Evidence**

Plaintiff argues that defendants have not properly sought judicial notice. Plaintiff agrees that the Court may take judicial notice that Judge Schenk was a party to the *Griffiths* action. However, plaintiff argues that defendants have not shown that the cases are similar enough to justify intra-court comity.

Plaintiff also argues that the Court may not take judicial notice of the judgment in the *Griffiths* action. Fed.R.Evid. 201 and case law permit only judicial notice of the contents of the case or the facts of the case which are not subject to reasonable dispute. Because defendants have not attached the entire procedural and factual history of the case, judicial notice is improper because it is impossible to tell how similar the cases are.

**E. Defendants' Request to Take Judicial Notice**

Defendants ask the Court to take judicial notice of several facts involved in the *Grif-*

*fiths* case which was heard by Judge Taylor, including the parties, the allegations in the complaint, the relief requested in the complaint, and the Court's order. Defendants argue that it is proper for Courts to take judicial notice of court orders and records in cases concerning similar issues. *H.H. Robertson Co. v. Mac–Fab Products, Inc.,* 711 F.Supp. 970, 972 (E.D.Mo.1988).

**F. Defendants' Supplemental Brief**

The Court ordered supplemental briefing on the applicability of a recent Ninth Circuit case on judicial immunity. Defendants responded that they do not believe the Ninth Circuit case to apply to this case because state judicial officers do not enjoy the same type of judicial immunity for injunctive relief as federal judges.

**G. Plaintiff's Supplemental Brief**

Plaintiff agrees with defendants and takes this opportunity to submit supplemental briefing on the other issues in the case. Plaintiff argues that *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), is an example of a case where the federal courts did not abstain from regulating a continuing unlawful practice of a state court judge. Plaintiff also attaches to her memorandum and calls to the Court's attention a recent California Court of Appeal Case, *McMillan v. Superior Court,* 96 Daily Journal D.A.R. 13001 (October 25, 1996), where the Court expressed its view that the legislature should reexamine the entire notion of involuntary references, either withdrawing its approval of these references or imposing some limitation on the process.

**H. Defendants' Reply to Plaintiff's Supplemental Brief**

Defendants argue that the issue of *Younger* abstention never arose in *Pulliam* and that *Pulliam* provides no support for plaintiff's position. Defendants contend that *McMillan* does not negate the important state interest in an alternative forum to handle discovery disputes and that plaintiff confuses the importance of the state interest with the legislature's choice on how to further that interest.

## IV.

### DISCUSSION

**A. The Orange County Superior Court—Does the Eleventh Amendment Bar Suit?**

**1. Is the Superior Court An Arm of the State Entitled to Eleventh Amendment Protection?**

Under *Franceschi v. Schwartz*, 57 F.3d 828 (9th Cir.1995), the Orange County Superior Court is clearly an "arm of the state" entitled to Eleventh Amendment protection. In that case, the Court held that the South Orange County Municipal Court is an arm of the state protected by the Eleventh Amendment. *Id.* at 831. There is no way to distinguish this case from the present case, and this Court is bound to follow *Franceschi* although plaintiff argues that it should not be followed.[1]

**2. As an Arm of the State, is the Orange County Superior Court Protected from Suit by the Eleventh Amendment?**

The Eleventh Amendment bars suit for either damages or injunctive relief against an arm of the state. *Id.* This suit seeks injunctive relief against the Superior Court, an arm of the state, and dismissal of the Superior Court is appropriate. Plaintiff's cases only support suit against an officer of the state for prospective injunctive relief, not the arm of the state itself. *See, e.g., Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986) (holding that where a state is sued, the Eleventh Amendment bars suit, but "[w]here the State itself or one of its agencies or departments is not named as defendant and where a state official is named instead, the Eleventh Amendment status of the suit is less straightforward."); *Shaw v. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 603–04 (9th Cir. 1986) (holding that while suit for prospective injunctive relief against a state would be barred, it is not barred against a state official).

Plaintiff requests that she be permitted to substitute the individual judges in for the Superior Court should the court dismiss the Superior Court. Opposition at 17. However, amendment should be allowed only if it is possible that plaintiff could state a claim, which, in turn, depends upon the abstention analysis which follows. Since the Court concludes that the federal court should abstain, there is no reason to allow the amendment.

**B. The Honorable Floyd Schenk—Should this Case be Dismissed Under the Younger Abstention Doctrine?**

The *Younger* abstention doctrine directs federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings. *Hirsh v. Justices of the Supreme Court*, 67 F.3d 708, 712 (9th Cir., 1995), citing *Younger v. Harris*, 401 U.S. 37, 40–41, 91 S.Ct. 746, 748–49, 27 L.Ed.2d 669 (1971). Absent "extraordinary circumstances," abstention in favor of state judicial proceedings is required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims. *Hirsh*, 67 F.3d at 712, citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). Abstention is appropriate based on "interests of comity and federalism [that] counsel federal courts to abstain from jurisdiction whenever federal claims could have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Lebbos v. Judges of the Superior Court*, 883 F.2d 810, 813 (9th Cir.1989). Abstention, however, "is the exception, not the rule, and absent significant countervailing interests, the federal courts are obliged to exercise their jurisdiction." *Id.* (citations and internal quotations omitted).

---

1. Plaintiff argues that *Franceschi* should not be followed because it relies on *Greater Los Angeles Council of Deafness, Inc. v. Zolin*, 812 F.2d 1103 (9th Cir.1987), which she argues was decided before the Ninth Circuit created the "arm of the state" test in *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198 (9th Cir.1988). Opposition at 16. However, this does not change the fact that this Court must follow *Franceschi*.

As noted, there are three requirements before a federal court may properly invoke the *Younger* abstention doctrine: "(1) ongoing state judicial proceedings; (2) implication of an important state interest in the proceedings; and (3) an adequate opportunity to raise federal questions in the proceedings." *Id.* at 814 (quoting *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir.1987)). Even if these requirements are met, abstention is inappropriate if bad faith prosecution or harassment is present, or where a statute is flagrantly and patently violative of constitutional prohibitions. *Id.*

### 1. Ongoing State Judicial Proceedings:

There are clearly ongoing state judicial proceedings here. Root argues that she does not seek to enjoin ongoing state proceedings because she challenges only the order appointing a referee and the order directing her to pay compensation to the referee. This argument is meritless, because the relevant inquiry is not whether the party seeks to enjoin ongoing state proceedings but whether there *are* ongoing state proceedings.

### 2. Implication of an Important State Interest in the Proceedings:

Defendants argue that the state has an important interest in allowing judges to use alternative forums for resolution of discovery disputes in civil cases, as evidenced by the statute under which Judge Schenk ordered referral, Cal.Code Civ.Proc. § 639(e). That statute provides, in relevant part, as follows:

> When the parties do not consent, the court may, upon the application of any party, or of its own motion, direct a reference in the following cases: ... (e) When the court in any pending action determines in its discretion that it is necessary for the court to appoint a referee to hear and determine any and all discovery motions and disputes relevant to discovery in the action and to report findings and make a recommendation thereon.

Cal.Code Civ.Proc. § 639(e).

The Supreme Court has "repeatedly recognized that the States have important interests in administering certain aspects of their judicial system." *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 12–13, 107 S.Ct. 1519, 1527, 95 L.Ed.2d 1 (1987); *Lebbos*, 883 F.2d at 814. In *Pennzoil*, the Supreme Court held that there was an important state interest in enforcing the orders and judgments of their courts and found abstention appropriate in an action brought by Pennzoil to enjoin Texaco from executing a Texas court's judgment in Texaco's favor pending appeal of that judgment.

The Supreme Court has also held that a federal court should have abstained from adjudicating a challenge to a state's contempt process because "[a] State's interest in the contempt process, through which it vindicates the regular operation of its judicial system ... is surely an important interest." *Juidice v. Vail*, 430 U.S. 327, 335, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376 (1977).

Similarly, here there is an important state interest in allowing judges to use alternative forums for resolution of discovery disputes in civil cases. *See Solorzano v. Superior Court of Los Angeles County*, 18 Cal.App.4th 603, 22 Cal.Rptr.2d 401 (1993). *Solorzano* held that "[w]hen the legislature amended section 639 ... it obviously intended to give the overburdened trial courts the opportunity to utilize the paid expertise of retired judges in the resolution of complicated, time-consuming discovery disputes." *Id.* at 614, 22 Cal. Rptr.2d 401.

Plaintiff's argument that there is not an important state interest is without merit. Plaintiff cites to *Aetna Life Ins. Co. v. Superior Court*, 182 Cal.App.3d 431, 227 Cal.Rptr. 460 (1986), where the Court of Appeal held improper a reference of all law and motion summary judgment proceedings to a referee, without any statutory authorization. *Id.* at 437, 227 Cal.Rptr. 460. The Court held that Cal.Code Civ.Proc. § 639 clearly does not apply to law and motion proceedings in an ordinary civil action, that the Judge erred in treating the referee's order as binding and not advisory, and stated that it did "not perceive a compelling public policy to validate the reference procedure used by the [trial] court." *Id.* However, in *Aetna*, the

reference was not authorized by statute unlike here, where Judge Schenk followed Cal. Code Civ.Proc. § 639(e). The court ultimately stated that "no public policy compels us to strain to validate what was in fact an invalid procedure," indicating that its concern was the lack of statutory authority. *Id.* The Court did cite to commentators questioning the advisability of the expanding use of referees. *Id.* However the court "mention[ed] these considerations not in derogation of alternatives to litigation, but simply to show the practice is not without its problems." *Id.* This case does not negate the fact that the state has a vital interest in the administration of the judicial system, including the use of alternative forums for discovery dispute resolution.

Plaintiff's citation to the recently decided *McMillan v. Superior Court,* 96 Daily Journal D.A.R. 13001 (October 25, 1996), does not support her argument that there is no important state interest in references under Cal. Code Civ.Proc. § 639(e). There the court stated that the judges "believe that the legislature should reexamine the entire notion of *involuntary* references and either withdraw its approval of these references or at least impose some limitations on the process." *Id.* The court did not declare that there was not an important state interest in permitting alternative forums for dispute resolution. Rather, the court disagreed with how the legislature and courts have implemented this state interest.

The controversial nature of the state reference process does not undermine the conclusion that there is an important state interest here in providing judges the opportunity to use alternative dispute resolution forums in the area of discovery disputes. The legislature has expressed this interest in amending Cal.Code Civ.Proc. § 639 to provide for involuntary reference of discovery disputes.

In *Griffiths v. Judicial Arbitration and Mediation Services, Inc.,* Case No. SA CV 93–973 GLT (*see* Exhibit A to Defendants' Motion), of which the Court takes judicial notice as requested by defendants, the Court reached this conclusion, relying on *Solorzano.* Although this case was decided before *McMillan,* its reasoning is persuasive.

### 3. Does Plaintiff Have an Adequate Opportunity to Raise Federal Questions in the Proceedings?

*(a) Does Bias Render the State Tribunal Incompetent such that Plaintiff Does not Have the Opportunity to Raise the Federal Claims Before a Competent State Tribunal?*

In *Partington v. Gedan,* 880 F.2d 116, 125 n. 3 (9th Cir.1989), the Ninth Circuit stated that in order for a litigant to have an adequate opportunity in the state proceedings to raise his or her constitutional challenges, as required under the third prong of the abstention test, there must not be incompetency of the state tribunal caused by bias. *Id.* The Ninth Circuit has referred to this as "the 'extraordinary circumstance' that the state tribunal is incompetent by reason of bias." *Hirsh v. Justices of the Supreme Court,* 67 F.3d 708, 713 (9th Cir.1995).

This case is not one that demonstrates the extraordinary circumstances where the tribunal is incompetent due to bias. While it is true that many state judges retire to become private judges, and that the more success this system has, the more job opportunities there will be, this is not a sufficient interest to disqualify all state judges as biased, which is what plaintiff suggests.

In *Gibson v. L.M. Berryhill, et al.,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), the Supreme Court held that abstention was not appropriate where the state entity which would decide the case, the State Board of Optometry, was "so biased by prejudgment and pecuniary interest that it could not constitutionally conduct hearings looking toward the revocation of [the plaintiffs'] licenses to practice optometry." The District Court found that the Board was biased for two reasons: (1) the Board had filed a complaint in state court against plaintiffs alleging improper conduct that would justify revoking plaintiffs' licenses, which charges were substantially similar to those pending against the plaintiffs before the Board; and (2) it was determined that the aim of the Board was to revoke the licenses of all optometrists in the state who were employed by business

corporations because the Board was comprised entirely of private practitioners and if these licenses were revoked the Board members would have personal benefit sufficiently large to render them constitutionally disqualified. *Id.*

The Supreme Court affirmed that abstention would not be appropriate based on the second ground of bias, personal interest, finding it unnecessary to discuss the first. The Court held that "those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." *Id.* The Supreme Court found no reason to disturb the District Court's factual findings that the Board had the aim to revoke the licenses of all of the optometrists employed by business corporations, that half of the state's optometrists were so employed, that the Board was comprised solely of private practitioners, and that success in the Board's efforts would possibly redound to the personal benefit of members of the Board. *Id.*

In *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), the statute at issue authorized a court to retain a portion of the fines of any defendant convicted before a judge. The Supreme Court held that while the question of what is a sufficient financial interest to disqualify a judge for bias may often be difficult, it definitely deprives a party of due process where the judge has a direct, personal, substantial pecuniary interest in reaching a conclusion against him. *Id.*

In *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), the Court explained that the financial interest need not be as direct or positive as in *Tumey.* The Supreme Court held that where the judge/mayor was responsible as mayor for the village finances, and a substantial portion of the village finances were provided by fines assessed by the judge/mayor, the due process clause was violated because the judge/mayor was not impartial, even though the judge/mayor received no direct payment. *Id.* at 59–60, 93 S.Ct. at 82–83. The Court also held that a party need not show prejudice in his case, but just a possible temptation to the average man that requires disqualification. *Id.* at 60, 93 S.Ct. at 83. There, such bias existed because the revenue

"was of such importance to the village that when legislation threatened its loss, the village retained a management consultant for advice upon the problem." *Id.* at 58, 93 S.Ct. at 82.

■ However, an adjudicator is presumed to be unbiased, and to overcome this presumption, a litigant must make a showing of conflict of interest or some other specific reason for disqualification. *Yamaha Motor Corp., U.S.A. v. Riney,* 21 F.3d 793, 798 (8th Cir.1994).

The district court in *Gibson* made specific findings that, if true, would show bias. Here, the allegations of the complaint do not establish that state judges do not want to stunt the growth of private judging because they want a job on retirement. The Court in *Ward* found bias without a direct pecuniary gain to the mayor/judge. However, the mayor had a clear interest in the outcome of the litigation, although his interest was as representative for the city. Here, any interest that Judge Schenk or the other judges of the Superior Court of Orange County have is speculative only, and this is not sufficient to overcome the presumption of fairness.

■ Bias can also be shown by a finding that the adjudicator prejudged the issues and has abdicated his or her judicial responsibilities. *Yamaha Motor Corp.,* 21 F.3d at 798. Plaintiff argues that there is evidence that Schenk prejudged Root's case. Opposition at 30, 32. The evidence of prejudgment is that when Root's Motion for Disqualification came before Judge Schenk on June 24, 1996, the Judge stated to Root's counsel, "If you read what the federal government and the state has said, sir, you stand to lose." This is not evidence of prejudgment, however. This is evidence that Judge Schenk had considered the arguments and authorities and found that plaintiff's arguments were wanting.

Plaintiff also argues that Judge Schenk "abdicated his judicial responsibilities" which shows his bias. The alleged abdication of judicial responsibilities does not establish that plaintiff cannot obtain a fair and unbiased decision. First, the undisputed record evidence shows that Judge Schenk did not, as plaintiff claims, make a "surprise" com-

pelled reference, never addressing if it was appropriate, as plaintiff argues. Rather, according to the January 29, 1996, hearing, the judge notified the parties that he was going to appoint a referee. He asked the parties to choose one, and the only objection made by plaintiff's counsel was that he objected to any referee from JAMS. Exhibit A to Reply at 12. In addition, the Court specified that the Referee "will not make the order. He will recommend that which he wants me to do. I then read what he has done. If I agree, then I sign the order. If I disagree, then I won't." Exhibit A to Reply at 19. These statements indicate that the judge plainly understood his responsibilities. No objection to the reference was made by plaintiff or defendants.

Second, the judge did not show bias in ordering that the parties "initially share equally" in the reference fees. While under California law, the district court cannot make an automatic equal provisional allocation without considering the appropriate factors, and exercising its discretion, the "trial court will be presumed to have done so, in the absence of a showing to the contrary" and there is no requirement that a trial court "explain the details of its exercise of discretion, [or] ... announce in conclusory fashion that it has reviewed the law, weighed all appropriate factors, and exercised its discretion." *DeBlase v. Superior Court*, 41 Cal. App.4th 1279, 1286, 49 Cal.Rptr.2d 229 (1996). Plaintiff's allegations do not make out a case of court bias.

Third, plaintiff argues that Judge Schenk showed his bias by ordering that a referee decide all pending *and future* discovery motions, which plaintiff claims is not proper. Opposition at 30. The case relied upon by plaintiff, *Bird v. Superior Court*, 112 Cal. App.3d 595, 600, 169 Cal.Rptr. 530 (1980), was decided before the amendment of § 639 to add subsection (e). Prior to that time, § 639 allowed reference for issues of fact and did not specifically discuss the reference of discovery disputes. Under this rule, an order that all future discovery motions would be decided by the referee was improper because the future discovery motions might or might not involve an issue of law. *See* Cal.

Code Civ.Proc. § 639 (West 1976). However, since subsection (e) was added in 1981, a referee may be appointed to hear and determine "any and all" discovery motions and report findings to the judge. Cal.Code Civ. Proc. § 639 (West Supp.1996). *Bird* cannot be regarded as controlling.

Assuming, however, that Judge Schenk did err, there is no set of facts alleged that show that he is biased and cannot fairly adjudicate these federal claims.

Plaintiff also argues that the Court should find bias because Judge Schenk is the target of personal abuse or criticism from the party before him, citing *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). In *Withrow*, the Court stated that situations in which the probability of a decisionmaker's bias is too high to be constitutionally tolerable include cases in which the decisionmaker "has been the target of personal abuse or criticism from the party before him." *Id.* at 47, 95 S.Ct. at 1464. Plaintiff argues that here, Root's federal complaint strongly criticizes Judge Schenk. However, if Root's argument is followed, there can never be abstention where a party's federal complaint criticizes the decision made by a state court judge, which clearly is not the law. A disgruntled litigant could thwart abstention and create federal jurisdiction by the mere force of critical allegations in her federal complaint. Fortunately for litigants and the public, most judges become accustomed to criticism, if not by litigants, then by courts of appeals; black robes do not cover thin skin. In short, the state judge's personal embroilment has not been stated so as to give rise to a conclusion of intolerable bias.

**4. Is Abstention Inappropriate Because There has Been Bad Faith Prosecution or Harassment, or Because the Statute is Flagrantly and Patently Violative of Constitutional Prohibitions?**

First, plaintiff never argues that the Code of Civil Procedure provision is so flagrantly and patently violative of constitutional prohibitions that abstention is not appropriate. Plaintiff does argue that there is bad faith because when plaintiff filed a motion for dis-

 

qualification of Judge Schenk, then Chief Justice Lucas, who had already retired and announced that he would be joining JAMS/ENDISPUTE, appointed a judge to rule on Ms. Root's disqualification motion. This judge denied the motion. Opposition at 31. Plaintiff, in her counsel's declaration, shows that this information came via a letter from the Superior Court's presiding judge. Decl. of Counsel, at 10. Defendants explain this as a form letter error, and they attach in their reply the Judicial Council letter naming Judge Parkin to hear the bias challenge, which letter names Chief Justice Lucas' successor, Chief Justice George, as having made the assignment. Ex. C. Nothing in the complaint suggests that plaintiff intends to allege that the former Chief Justice came back from retirement to designate a judge to hear the disqualification motion in order to make sure that the motion was denied.

Plaintiff also argues that there is bad faith shown since Judge Schenk has prejudged the case, as discussed above. However, there has been no showing of bad faith prosecution or harassment, as required by *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir.1987).

In conclusion, there is an adequate opportunity to raise federal questions in the proceedings, and no showing of bad faith prosecution and harassment.

## C. Intra–Court Comity

Defendants ask the Court to follow Judge Taylor's decision in *Griffiths* on the basis that intra-court comity requires that the judges within the district not deviate from that decision. Having taken judicial notice of the decision, it is sufficient to note that the reasoning contained therein is persuasive. It is unnecessary to adopt the ground of intra-court comity as the basis for this court's ruling because ample authority points to the conclusion that abstention is appropriate.

## V.

### *CONCLUSION*

Accordingly, and for the foregoing reasons, the action is dismissed in its entirety without prejudice to the merits of plaintiff's claims.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on all counsel of record.