[No. B206513. Second Dist., Div. Seven. May 28, 2009.]

RITO GARCIA et al., Plaintiffs, v.
PAULINA SANTANA et al., Defendants;
SHARON GREEN, Intervener and Respondent;
CUAUHTEMOC LOPEZ et al., Interveners and Appellants.

**COUNSEL**

Adams Kessler and Mark A. O'Brien for Interveners and Appellants.

Bahar Law Office and Sarvenaz Bahar for Intervener and Respondent.

**OPINION**

**ZELON, J.**—Appellants seek review of the trial court's determination to award no attorney's fees against the respondent, who is indigent and became self-represented during this litigation. Acknowledging that they might be unable to collect any amount of such fees awarded, they nonetheless concede that they do not wish tenants who have disputes "to think that they're free to file or defend litigation without risk of exposure to a fee award." Using fee awards as an instrument to deny access to the courts is neither the policy of the State of California, nor the purpose of the statute in question. Indeed, California Rules of Court, rule 10.960, subdivision (b), adopted effective July 1, 2008 states: "Providing access to justice for self-represented litigants is a priority for California courts." We remand to the trial court for reconsideration of the amount of fees consistent with these principles.

## FACTUAL AND PROCEDURAL BACKGROUND

Sharon Green was a member and tenant of Amar Plaza,[1] a housing cooperative for low-income tenants. She had lived there, with the assistance of a federal housing subsidy, for approximately 31 years until she was evicted in January 2007.

In February 2005, other tenants of the complex filed suit against the complex and its managers and directors; those pleadings are not at issue here. Green initially sought to intervene in that litigation in October 2006. In April 2007, she filed her first amended complaint in intervention, alleging violations of the Corporations Code and the bylaws of Amar Plaza in the management and operation of the complex. Although she was represented by counsel at that time, her counsel withdrew on July 7, 2007, and she thereafter acted as a self-represented litigant. The Amar Plaza parties have not provided this court with a record sufficient to determine the disposition of the claims raised by the other parties, although they suggest those claims were voluntarily dismissed; we cannot determine the outcome of any portion of the litigation other than Green's claims, or determine whether the merits of the matter in which she intervened were ever determined.

Twenty days after her counsel withdrew, Green was served with the Amar Plaza parties' motion for summary judgment. She did not respond; the trial court granted the unopposed motion on November 5, and entered judgment on November 7, 2007. We have not been asked to review that judgment.[2]

Following the entry of judgment, the Amar Plaza parties moved for attorney's fees of $48,328 pursuant to Civil Code section 1354, subdivision (c). After several briefs were filed by the parties, and after Green filed various documents to support her claim of indigency, including a copy of the waiver of court fees and costs under Government Code section 68511.3, the court awarded no attorney's fees in light of Green's financial condition on March 4, 2008. The Amar Plaza parties timely appealed.

## STANDARD OF REVIEW

The issue of a party's entitlement to attorney's fees is a legal issue which we review de novo. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169,

---

[1] Defendants named in the complaint in intervention were: Cuauhtemoc Lopez, Rosario Vigil, Amparo Sierra, Rampart Properties Inc., Frank Acevedo, and Javier Flores. They will be referred to for ease of reference as the Amar Plaza parties.

[2] The Amar Plaza parties have not included in the record the motion for summary judgment. Although they assert that Green's claims were without merit, we are unable to make that determination based on the record before us. The party seeking to challenge an order on appeal has the burden to provide an adequate record. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 [240 Cal.Rptr. 872, 743 P.2d 932].)

1175–1176 [39 Cal.Rptr.3d 788, 129 P.3d 1]; *Leamon v. Krajkiewcz* (2003) 107 Cal.App.4th 424, 431 [132 Cal.Rptr.2d 362]; *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142 [118 Cal.Rptr.2d 569].) However, the determination of the amount of fees to be awarded is reviewed for abuse of discretion. (See, e.g., *MHC Financing Limited Partnership Two v. City of Santee* (2005) 125 Cal.App.4th 1372, 1397 [23 Cal.Rptr.3d 622]; *Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 669 [17 Cal.Rptr.3d 427].)

The trial court in this matter acknowledged the right, under the governing statute, for the prevailing parties to recover their attorney's fees. We review that determination de novo. Having done so, it was then obligated to determine the amount of fees to be awarded. It is that determination that is, at base, at issue in this appeal. We will disturb the trial court's exercise of discretion in the determination of a reasonable attorney's fee "only where there has been a manifest abuse of discretion." (*Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 228 [168 Cal.Rptr. 525]; see also *Seever v. Copley Press, Inc.* (2006) 141 Cal.App.4th 1550, 1556–1557 [47 Cal.Rptr.3d 206].)

## DISCUSSION

*The Governing Statute Supports an Award of Attorney's Fees*

Green, in her complaint in intervention, sued Amar Plaza as a common interest development, subject to the Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.), on claims arising from its bylaws. Civil Code section 1354, subdivision (c) provides: "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." The Amar Plaza parties assert that the action is properly deemed one to enforce the governing documents, and thus that the trial court was required to award reasonable fees to the prevailing parties.

Green does not dispute that the Amar Plaza parties were entitled to seek an award of fees pursuant to the statute, and, for purposes of this appeal, establishes no basis to disturb that determination by the court below. Nor does any party dispute the court's analysis of the amount of fees claimed. We find no legal error in either determination. The issue before this court arises, instead, from the determination that the reasonable amount of fees in this case, considering all of the circumstances, was properly zero, based only on Green's financial condition. We turn to that determination now.

*The Trial Court Did Not Abuse Its Discretion in Considering Green's Financial Condition in Setting the Amount of Attorney's Fees*

The Amar Plaza parties assert that their entitlement to legal fees, as reflected in the statute, prohibits the trial court from considering Green's financial condition, as the losing party, in determining the amount of fees to be awarded. Urging that to hold otherwise would impose in this and future cases burdensome discovery obligations on the parties, would result in extra proceedings in the courts, would encourage "poor or insolvent parties to pursue protracted, pointless litigation" and would cause confusion because of a lack of guidance in the case law, they urge this court to rule that the trial court cannot properly consider the impact of a fee award on the litigant against who it is made except as follows: "While Appellants recognize that they may have trouble collecting any fees from Green, Green's financial condition could change in the future, whether from hard work or good luck. Moreover, since Amar Plaza has many other tenants who sometimes have legal or corporate disputes with it, Amar Plaza does not want those tenants to think that they're free to file or defend litigation without risk of exposure to a fee award."[3]

The Amar Plaza parties, however, point to nothing in the statute, or its history, indicating that the Legislature intended to create additional barriers to access to the courts for indigent persons in California, whether they reside in federally subsidized housing or not. None of the cases on which they rely either address the policy underlying the fee-shifting provision, or consider whether the financial status of the party to be assessed fees is fairly considered in determining a reasonable award.[4] Nor do they address the long-standing precedents in this state creating an unbroken line of authority that the legal processes followed in the courtrooms of California are not to be applied in a way that denies access to those courts because of a litigant's financial status.

---

[3] The Amar Plaza parties appear to believe that Green has funds and has abused her status as an indigent to obtain benefits in this matter: "No one has denied Green access to the courts. She apparently used her poverty to obtain waivers of the various filing and motion fees." They also complain that Green was able at one time to retain counsel and has been able to obtain counsel on appeal. Finally, the Amar Plaza parties appear to assert that Green's failure to obtain contingent counsel reflects the merits of her case; as discussed below, however, access to our courts is not based on whether contingent counsel is available to a party in a particular case.

[4] *Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360 [50 Cal.Rptr.3d 40]; *Parrott v. Mooring Townhomes Assn., Inc.* (2003) 112 Cal.App.4th 873 [6 Cal.Rptr.3d 116]; *Kaplan v. Fairway Oaks Homeowners Assn.* (2002) 98 Cal.App.4th 715 [120 Cal.Rptr.2d 158].

*Californians Have the Right to Access the Courts*

To trace the origins of California's commitment to access to justice for all Californians, without respect to income, we begin with the right to proceed in forma pauperis, as Green did in this case. In 1917, the Supreme Court, in *Martin v. Superior Court* (1917) 176 Cal. 289 [168 P. 135], held that the courts have the inherent authority to allow indigent parties, on a proper showing, to proceed without payment of court fees and costs, despite the absence of specific legislative authorization to do so. Looking to the common law, the court found the inherent power to remit fees: "And this one would naturally expect to find since, imperfect as was the ancient common-law system, harsh as it was in many of its methods and measures, it would strike one with surprise to be credibly informed that the common-law courts of England shut their doors upon all poor suitors who could not pay fees, until parliament came to their relief. Even greater would be the reproach to the system of jurisprudence of the state of California if it could truly be declared that in this twentieth century, by its codes and statutes, it had said the same thing . . . ." (*Id.* at p. 294.)

Our Supreme Court returned to this issue in *Isrin v. Superior Court* (1965) 63 Cal.2d 153 [45 Cal.Rptr. 320, 403 P.2d 728], where the court faced the issue of whether a plaintiff, who otherwise qualified for in forma pauperis relief, could nonetheless be denied such relief because she was represented by counsel acting under a contingent fee contract. The court held that the right to proceed may not be denied under those circumstances, in part because the indigent should not be limited to choosing only from among counsel who would agree to subsidize those costs. (*Isrin v. Superior Court, supra*, at p. 165.) Moreover, a rule denying such relief would improperly restrict the cases that would come to court. While cases in which liability, or the lack of liability, is apparent would not be affected by such a rule, it is precisely those cases where it is not clear that liability lies, or that merit is totally absent, where the law often is developed. Whether those cases should be brought should not depend on the payment of court costs: "The natural consequence of the . . . rule is that the indigent with an uncertain claim may go without counsel and, being a layman, may simply fail to assert what rights he has. To the extent that [the rule] has the practical effect of restricting an indigent's access to the courts because of his poverty, it contravenes the fundamental notions of equality and fairness which since the earliest days of the common law have found expression in the right to proceed in forma pauperis. (See *Martin v. Superior Court* (1917) *supra*, 176 Cal. 289, 293–297.)" (*Isrin v. Superior Court, supra*, 63 Cal.2d at p. 165.)

These fundamental principles of fairness and access extend to issues other than the right to proceed in forma pauperis. In *Baltayan v. Estate of Getemyan*

(2001) 90 Cal.App.4th 1427 [110 Cal.Rptr.2d 72], the court considered whether the indigency of the plaintiff should be considered in determining the amount of the undertaking required by Code of Civil Procedure section 1030, which requires an undertaking by an out-of-state plaintiff where defendant has shown the reasonable possibility of a successful defense. Holding that the failure to consider the financial status of the plaintiff, which resulted in the dismissal of the case because of his failure to post the required undertaking, was an abuse of discretion, the court explained, "dismissal of appellant's case resulted in a manifest miscarriage of justice. It effectively precluded appellant from litigating his claims simply because he is indigent and respondents proved a reasonable possibility of success." (90 Cal.App.4th at p. 1435.) In the court's view, a showing that a case may be without merit was insufficient to bar access on financial grounds, even in the context of a statutory scheme designed to protect California defendants from the costs of lawsuits without demonstrable merit.

■ Justice Johnson's concurring opinion in *Baltayan* traced the historical antecedents of the right to proceed in forma pauperis, and the rights of the indigent to access to California courts before and after the Supreme Court's decision in *Martin*. Noting that the Statutes of Henry VII and Henry VIII were incorporated into California law, the opinion noted that those statutes provided not only for waiver of pretrial fees and costs, but also for relief from automatic payment of the costs of the opponent should the indigent litigant lose. (*Baltayan v. Estate of Getemyan, supra*, 90 Cal.App.4th at pp. 1437–1438 (conc. opn. of Johnson, J.).) The consequences of such a loss, instead, were left to the discretion of the courts. (*Id.* at p. 1447.) The compelling lesson drawn should not be forgotten in the case at hand: "In ruling indigents are entitled to waiver of security for costs, both England and California are saying one party's economic interest in receiving its costs of litigation should it win cannot be used to deny an indigent party his fundamental right of access to the courts. In other words, access trumps comfort." (*Id.* at p. 1442, fn. omitted; see *Alshafie v. Lallande* (2009) 171 Cal.App.4th 421 [89 Cal.Rptr.3d 788] [hearing on financial condition required to determine if out-of-state plaintiff must post bond; citing concurring opinion in *Baltayan*].)

This court recently confirmed the guiding principle that litigation costs are not intended to be used as a tool to deny access to the courts, nor to deter persons from asserting their rights at the cost of their ability to provide for the necessities of life. In *Cruz v. Superior Court* (2004) 120 Cal.App.4th 175 [14 Cal.Rptr.3d 917], we held that a hearing was required in the event of an evidentiary conflict concerning eligibility for in forma pauperis relief. The fact that a litigant had some limited resources was insufficient to deny such a person the right to proceed, an entitlement grounded "in a common law right of access to the courts and constitutional principles of due process. (*Earls v.*

*Superior Court* (1971) 6 Cal.3d 109, 113–114 [98 Cal.Rptr. 302, 490 P.2d 814].)" (*Cruz v. Superior Court, supra,* at p. 185.)

An argument similar to the Amar Plaza parties' assertion that consideration of financial status would lead to a failure to discourage the indigent from filing claims of limited, or no merit, was asserted on behalf of imposing discovery referee fees on indigent parties as a means of discouraging abuse of the discovery rules. The court rejected that assertion squarely in *Solorzano v. Superior Court* (1993) 18 Cal.App.4th 603, 616–617 [22 Cal.Rptr.2d 401]. There, instead, trial courts were directed to consider whether any allocation of fees could be fair and reasonable under the circumstances.[5]

At base, the Amar Plaza parties' arguments founder on the shoals of these cases, and the principles of access to justice. In exercising its discretion to consider financial condition, the trial court properly declined to abandon these principles.[6]

*The Statute Requires the Fee to Be Reasonable*

The Amar Plaza parties asserted in the trial court that their fees were properly determined by determining the number of hours of legal services provided, and multiplying that number by a reasonable hourly rate. In urging that the analysis both began and ended with that calculation, however, they ascribed no meaning to the statute's inclusion of the requirement that the fee be reasonable. That requirement is, however, meaningful.

As a matter of statutory interpretation, we must give meaning to all of the statute's terms. We begin with the fundamental principle that "[t]he objective of statutory construction is to determine the intent of the enacting body so that the law may receive the interpretation that best effectuates that intent. [Citation.]" (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818

---

[5] We note that, because the Amar Plaza parties failed to provide the record concerning the summary judgment motion (see fn. 2, *ante*), we cannot determine the basis on which that motion was granted. For example, we do not know whether the court relied on the failure of the self-represented litigant to file a separate statement of disputed material facts, or reached the merits of the matter. We thus cannot determine that Green's claims were without merit or the complaint in intervention was abusive in any manner.

[6] The fact that Green was self-represented for a majority of the proceedings in the case represents a growing trend in our courts, which the Supreme Court has urged us to be cognizant of in conducting our business and developing our rules and procedures. (See *Elkins v. Superior Court* (2007) 41 Cal.4th 1337 [63 Cal.Rptr.3d 483, 163 P.3d 160] [striking down rules limiting the presentation of evidence in family law matters as contrary to protections for a litigant's day in court].) Just as family law litigants "should not be subjected to second-class status or deprived of access to justice" (*id.* at p. 1368), self-represented litigants should also be assured of the protection of their rights to access the courts and present their claims.

[31 Cal.Rptr.3d 591, 115 P.3d 1233].) To ascertain that intent, "we turn first to the words of the statute, giving them their usual and ordinary meaning. [Citations.]" (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].) The statute's every word and clause should be given effect so that no part or provision is rendered meaningless or inoperative. (*Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274 [41 Cal.Rptr.2d 220, 895 P.2d 56]; *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) Whenever possible, no part should be rendered " 'useless or deprived of meaning.' " (*Gay Law Students Assn. v. Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 478 [156 Cal.Rptr. 14, 595 P.2d 592].)

Reading the language of the statute to include all of its terms, we must ascribe meaning to the word reasonable. We do so in the context of " 'the whole system of law of which it is a part so that all may be harmonized and have effect. [Citations.]' " (*Landrum v. Superior Court* (1981) 30 Cal.3d 1, 14 [177 Cal.Rptr. 325, 634 P.2d 352].)

In *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084 [95 Cal.Rptr. 2d 198, 997 P.2d 511], the Supreme Court addressed the method of determining a reasonable fee as follows: " 'After the trial court has performed the calculations [of the lodestar], it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the [Civil Code] section 1717 award so that it is a reasonable figure.' " (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at pp. 1095–1096, quoting *Sternwest Corp. v. Ash* (1986) 183 Cal.App.3d 74, 77 [227 Cal.Rptr. 804].) That determination is made " 'after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.' " (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1096, quoting *Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623–624 [134 Cal.Rptr. 602].)

While *PLCM* involved contractual attorney's fees, the use of its lodestar method in determining statutory fees was expressly approved by the Supreme Court in *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1134–1136 [104 Cal.Rptr.2d 377, 17 P.3d 735]. In that case, involving the mandatory fee provision of Code of Civil Procedure section 425.16, the court reviewed the broad range of statutory fee cases in which the use of the lodestar had been approved, and concluded that the Legislature appeared to have endorsed the method generally, except in the limited instances in which it expressly limited the method. Finding no limitation in section 425.16, the court approved its

use; here too, the Legislature used no language indicating a restriction on the method of calculating the fee other than it be reasonable.[7]

■ Green's argument that the trial court, in setting a reasonable fee, properly considered her financial condition as one of the circumstances of the case, relies on cases that recognized an award of attorney's fees should not impose an unreasonable financial burden on the losing party. Green relied below on *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859 [110 Cal.Rptr.2d 903] (*Rosenman*), for the principle that attorney's fees should not result in "financial ruin." That case, brought under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) involved an award of attorney's fees to a prevailing defendant. Under the FEHA, the court has the discretion to award reasonable attorney's fees and costs to the prevailing party. (Gov. Code, § 12965, subd. (b).) In *Rosenman*, following federal employment discrimination law, this court limited recovery to a prevailing defendant to a case where the plaintiff's action was "frivolous, unreasonable, or groundless" to avoid discouraging litigants with meritorious claims from enforcing antidiscrimination laws. (*Rosenman, supra,* 91 Cal.App.4th at pp. 868–869.) Even in such a case, however, the court required consideration of the financial status of the party subject to the award: "The trial court should also make findings as to the plaintiff's ability to pay attorney fees, and how large the award should be in light of the plaintiff's financial situation. As the Ninth Circuit Court of Appeals held in *Patton v. County of Kings* (9th Cir. 1988) 857 F.2d 1379, 1382, the trial court 'should consider the financial resources of the plaintiff in determining the amount of attorney's fees to award to a prevailing defendant.' We wholeheartedly agree with the Ninth Circuit's holding an award of attorney fees ' "should not subject the plaintiff to financial ruin." ' (*Ibid.*)" (*Rosenman, supra,* at p. 868, fn. 42.)

■ The Amar Plaza parties correctly assert that the relevant Civil Code provision, unlike the FEHA and civil rights cases, calls for the assessment of fees on the losing party whether plaintiff or defendant. Unlike FEHA cases, defendants need not show that the case was frivolous to recover fees, and there is no incentive in the statute here, as there is in those cases, to encourage plaintiffs to assert their rights. The Amar Plaza parties are also correct that those cases provide the established authority for consideration of the financial status of the losing plaintiff in setting fees even where the case is determined to be frivolous, a determination this court is unable to make in this case. Nonetheless, they point to nothing in the Civil Code that indicates a legislative determination that parties should be punished for bringing unsuccessful cases, when the threat of an award of fees untethered to any

---

[7] Code of Civil Procedure section 425.16, by contrast, contains no such restriction requiring only reasonable fees.

consideration of ability to pay would mean the denial of meaningful access. We find no such directive in the statute sufficient to overcome the fundamental rights of access to our courts: "Access to the courts is indeed a right guaranteed to all persons by the federal and state Constitutions. It is regarded as arising from the First Amendment right to petition the government for redress of grievances [citations], a right also protected by article I, section 3 of the California Constitution. (See also Cal. Const., art. I, § 16 [inviolate right to jury trial].) Numerous cases, in a variety of contexts, may be cited for the obvious importance of this right to our system of government and, indeed, to the very fabric of our society. [Citations.]" (*Jersey v. John Muir Medical Center* (2002) 97 Cal.App.4th 814, 821 [118 Cal.Rptr.2d 807].)

To the contrary, the arc of our cases demonstrates the strength of our commitment that financial disabilities should not bar access for litigants, nor unduly discourage them from seeking available remedies. For example, in *In re Marriage of Norton* (1988) 206 Cal.App.3d 53 [253 Cal.Rptr. 354], the trial court awarded attorney's fees as a sanction for bringing a frivolous claim in a marital proceeding. The court affirmed the trial court's action, which took into consideration the financial status of the party being sanctioned: "Even though the award of attorney fees in this action is in the nature of a sanction, the court should not impose an unreasonable financial burden upon the sanctioned party." (*Id.* at p. 59.)

So too, in other contexts. Code of Civil Procedure section 998 provides for the shifting of certain costs and fees in order to encourage settlement of litigation. To do so effectively, it must, by definition, impose economic consequences on a party which fails to evaluate its case appropriately in light of a meaningful settlement offer. Even in that situation, however, the trial court must consider the economic circumstances of the unsuccessful party in determining the award because "If the goal of Code of Civil Procedure section 998 is to encourage fair and reasonable settlements—and not settlements at any cost—trial courts in exercising their discretion must ensure the incentives to settle are balanced between the two parties. Otherwise less affluent parties will be pressured into accepting unreasonable offers just to avoid the risk of a financial penalty they can't afford. Thus, when two competing parties possess vastly disparate economic resources, this may require the trial courts to 'scale' the financial incentives (in this instance the section 998 cost awards) to the parties' respective resources." (*Seever v. Copley Press, Inc.* (2006) 141 Cal.App.4th 1550, 1561–1562 [47 Cal.Rptr.3d 206].)

■ In determining the amount of fees to be awarded to the prevailing party where the statute, as here, requires that the fee be reasonable, the trial court must therefore consider the other circumstances in the case in performing the lodestar analysis. Those other circumstances will include, as appropriate, the financial circumstances of the losing party and the impact of the

award on that party. Here, the trial court did consider those financial circumstances, but did not clearly consider all of the other circumstances in setting the amount of fees. As a result, we are unable to determine whether the court exercised its discretion to balance all of the relevant factors against each other, or whether the determination that the amount to be assessed was zero was the result of such a balance. Because a trial court's failure to exercise discretion is "itself an abuse of discretion" (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 515 [66 Cal.Rptr.3d 87]), we will remand for the court to do so.

██ In exercising that discretion, the trial court, having heard the matter and reviewed Green's showing as to the effect of a fee award on her ability to carry on with the requirements of daily life, may properly determine that no allocation of fees can be made within the fair exercise of its authority. That will not be the result in every case, may not be the case here, and may not often be the case. But, in the proper case, the trial court does have the discretion to determine that the award that is reasonable is zero.

Moreover, the fact that a litigant was able, for a short period of time, to be represented by counsel before she was required to become self-represented, cannot be asserted as the basis to justify denial of her access to the courts by making a fee award that she is unable to pay without financial ruin. It cannot be the law of this state, in this century, that additional financial burdens, burdens beyond the capacity of the parties to bear in the face of demonstrated indigency, are placed to provide extra deterrence to those parties against pursuing their rights in our courts. That has not been so since at least 1917; it is not consistent with our Rules of Court; the Legislature did not require it. Nor will we.

## DISPOSITION

The award of attorney's fees is reversed and the matter is remanded for further proceedings consistent with this opinion. Each party is to bear its own costs on appeal.

Woods, Acting P. J., concurred.

**WOODS, Acting P. J.,** Concurring.—I respectfully concur in the judgment.

It appears to this concurring justice that whether one adopts the majority view articulated in the majority opinion or the view expressed by the dissent, the ultimate destination point is the same. A reversal is required. I explain with more specificity hereafter.

The core issue in this appeal is whether the trial court properly exercised its discretion in ruling that the prevailing party on the merits was to receive "zero" dollars in attorneys' fees, a ruling which is tantamount to refusing to award any attorneys' fees, in my opinion. That determination was apparently made on the basis respondent was currently an in propria persona indigent and financially unable to pay any award of attorneys' fees at the time the award was determined.

As the dissent observes, however, Civil Code section 1354, subdivision (c) appears to be at loggerheads with that ruling in that the Legislature has provided that upon prevailing, an award of attorneys' fees *shall* be made. I agree with the dissent in maintaining that the use of the word *shall* in a statute generally indicates a mandatory application as stated by our high court in *People v. Allen* (2007) 42 Cal.4th 91, 102 [64 Cal.Rptr.3d 124, 164 P.3d 557].

The majority, however, opines that the record made by the trial court does not lend itself to a definitive answer of whether or not the court properly exercised its required discretion in making the award because, apparently, the only factor considered by the trial court was the financial condition of the respondent at the time the award was made. Other factors, says the majority, should include application of the well litigated and settled concept commonly called the lode star method, but adjusted for consideration of other factors depending on the facts presented in a particular case. I agree that financial condition is one such other factor to be considered by the trial court in considering an award of attorneys' fees.

It is clear to this concurring justice that the trial court erred in arriving at a *zero* determination in fixing attorneys' fees, which is tantamount to refusing to award attorneys' fees, in my opinion. The matter should be reversed and remanded to the trial court for it to reconsider awarding attorneys' fees as is mandated by Civil Code section 1354, subdivision (c) and in exercising its discretion as to the amount to make manifest what factors it is utilizing in making the award.

I also write separately to express some discomfort with the separate concurring opinion of Justice Johnson in *Baltayan v. Estate of Getemyan* (2001) 90 Cal.App.4th 1427, 1436 [110 Cal.Rptr.2d 72] on which the majority in this case places extensive reliance. Justice Johnson opined in a scholarly manner that an out-of-state indigent defendant cannot be required to post a bond before accessing and defending a law suit in the State of California. Initially, I note that the facts in *Baltayan* are clearly distinguishable from the instant case, raising a question of the precedential value of *Baltayan* to this case. Second, Justice Johnson sums up his concurring opinion by stating "In other words, access trumps comfort." (*Id.* at p. 1442 (conc. opn. of Johnson, J.).)

In spite of the lofty and appealing principle sought to be illuminated by Justice Johnson, the words are unsettling to this concurring justice. By implication, the scales of justice must always tip in favor of access. I do not find that to always be the case. One example comes immediately to mind pertaining to vexatious litigants. In applying the vexatious litigant statute, access to the courts is curtailed, and indeed precluded in some instances, by requiring prior court ordered permission to access the courts by an offending party. (Code Civ. Proc., § 391 et seq.) I find the bright-line concept of Justice Johnson's concurrence to be noble and high minded but too broad to be of utility in all cases.

I respectfully concur in the judgment for the reasons stated.

**JACKSON, J.,** Concurring and Dissenting.—While I concur in the majority's holding that the attorney's fees award must be reversed, I respectfully dissent as to the rationale. In my view, the trial court abused its discretion in awarding no attorney's fees based solely on Green's indigency, and it should not consider Green's indigency in making its award.

Civil Code section 1354, subdivision (c) (section 1354(c)), provides that "[i]n an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." It is this statute which governs our review of the trial court's award of no attorney's fees.

In the construction of statutes, our primary goal is to ascertain and give effect to the intent of the Legislature. (Code Civ. Proc., § 1859; *Troppman v. Valverde* (2007) 40 Cal.4th 1121, 1135 [57 Cal.Rptr.3d 306, 156 P.3d 328].) Our role "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858; see *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].)

We look first to the language of the statute; if clear and unambiguous, we will give effect to its plain meaning. (*Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 227 [64 Cal.Rptr.3d 407, 165 P.3d 133].) When construing the statute, we turn first to the words themselves, giving them their usual, ordinary meanings. (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 708–709 [61 Cal.Rptr.3d 689, 161 P.3d 198].) If possible, each word and phrase should be given significance. (*People v. Mays* (2007) 148 Cal.App.4th 13, 29 [55 Cal.Rptr.3d 356].) The words used "must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible." (*California Mfrs. Assn. v. Public Utilities Com.* (1979) 24

Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836]; accord, *Troppman v. Valverde, supra*, 40 Cal.4th at p. 1135, fn. 10.)

The language of section 1354(c) is clear and unambiguous. It provides that "the prevailing party shall be awarded reasonable attorney's fees and costs." "Shall" is generally construed to mean "mandatory." (*People v. Allen* (2007) 42 Cal.4th 91, 102 [64 Cal.Rptr.3d 124, 164 P.3d 557].) Thus, the only interpretation of section 1354(c) which gives effect to each word in the section is that the section entitles the prevailing party to an award of reasonable attorney's fees and costs.

As the majority recognizes, the Supreme Court has stated that, in determining reasonable attorney's fees under Civil Code section 1717, subdivision (a), the court "ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. 'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' " (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511].) The court may then adjust the lodestar figure based upon factors specific to the case before it, including " 'the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.' " (*Id.* at pp. 1095–1096.) Nothing in the Supreme Court's opinion as to the calculation of a reasonable attorney's fees award, or in section 1354(c) itself, suggests that an award of attorney's fees may essentially be denied based solely on the losing party's indigence, or that the court is even to consider the losing party's indigence.

While the courts may have the inherent authority to permit indigent parties to litigate their cases without payment of court fees, this does not mean the courts have inherent authority to permit indigent parties to litigate their cases without payment of statutorily authorized attorney's fees and costs to the opposing party. It is one thing for the court to forgo collection of its fees to allow indigent parties to litigate their cases. It is quite another to force parties to forgo attorney's fees and costs to which they would otherwise be entitled to enable indigent parties to pursue litigation against them. Certainly, if the indigent parties prevailed in the litigation, they would insist upon being awarded attorney's fees and costs as the prevailing parties. Basic fairness demands that the opposing parties be able to recover their attorney's fees and costs as well. Previous decisions by this court cited by the majority do not compel a contrary conclusion.

*Baltayan v. Estate of Getemyan* (2001) 90 Cal.App.4th 1427 [110 Cal.Rptr.2d 72] involved a request for a waiver of the undertaking required of

an out-of-state plaintiff under certain conditions. We noted that "[w]here the plaintiff establishes indigency, a trial court has discretion to waive the posting of security under Code of Civil Procedure section 1030." (*Baltayan, supra*, at p. 1433.) Since the plaintiff in that case had been granted in forma pauperis status, we held that "the trial court acted arbitrarily and capriciously in refusing to either vacate or reduce the amount of the undertaking." (*Id.* at p. 1435.)

Thereafter, we noted that "dismissal of [the plaintiff's] case resulted in a manifest miscarriage of justice. It effectively precluded [him] from litigating his claims simply because he is indigent and [defendants] proved a reasonable possibility of success." (*Baltayan v. Estate of Getemyan, supra*, 90 Cal.App.4th at p. 1435.)

*Baltayan* does not support the proposition that an indigent plaintiff, who was granted access to the courts but lost the case, is exempt from paying the damages to which the defendant is entitled, including, where applicable, attorney's fees and costs. In his concurring opinion, Justice Johnson noted that there is no basis for treating an out-of-state indigent plaintiff differently than a resident indigent plaintiff: " 'In either instance the likelihood of a prevailing defendant collecting his costs is nil, because the plaintiff in each circumstance is a pauper.' " (*Baltayan v. Estate of Getemyan, supra*, 90 Cal.App.4th at p. 1442 (conc. opn. of Johnson, J.).) The defendant is still entitled to his costs and attorney's fees upon prevailing, he just may be unable to collect them. The court merely exempts an indigent out-of-state plaintiff from paying them up front as security in order to litigate his case.

*Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859 [110 Cal.Rptr.2d 903] involved a discretionary award of attorney's fees awarded under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.). We noted that, in making an award, "[t]he trial court should . . . make findings as to the plaintiff's ability to pay attorney fees, and how large the award should be in light of the plaintiff's financial situation." (91 Cal.App.4th at p. 868, fn. 42.) We expressed concern that "an award of attorney fees ' "should not subject the plaintiff to financial ruin." ' " (*Ibid.*) Because attorney's fees were discretionary in *Rosenman*, the decision does not support a conclusion that a plaintiff's indigence precludes an award of attorney's fees where such an award is mandated by statute.

*Patton v. County of Kings* (9th Cir. 1988) 857 F.2d 1379 similarly involved a discretionary attorney's fees award in a civil rights case. The court agreed that the trial court should consider the plaintiff's financial resources in awarding attorney's fees. It added, however, that " 'a district court should not

refuse to award attorney's fees to a prevailing defendant . . . solely on the ground of the plaintiff's financial situation.' " (*Id.* at p. 1382.) That is exactly what occurred here.

If the Legislature had intended that an award of attorney's fees and costs under section 1354(c) be contingent upon a party's ability to pay in order to ensure access to the courts, it certainly had the ability to specify this to be the case in the statute. For example, Family Code section 2030, subdivision (a), provides: "(1) In a proceeding for dissolution of marriage . . . and in any proceeding subsequent to entry of a related judgment, the court shall ensure that each party has access to legal representation to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party, except a governmental entity, to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding. [¶] (2) Whether one party shall be ordered to pay attorney's fees and costs for another party, and what amount shall be paid, shall be determined based upon, (A) the respective incomes and needs of the parties, and (B) any factors affecting the parties' respective abilities to pay. A party who lacks the financial ability to hire an attorney may request, as an in pro per litigant, that the court order the other party, if that other party has the financial ability, to pay a reasonable amount to allow the unrepresented party to retain an attorney in a timely manner before proceedings in the matter go forward." That the Legislature did not use similar language in section 1354(c) suggests that it intended the award of attorney's fees and costs to be mandatory, and that it did not intend to exempt indigent plaintiffs from paying such an award.

I disagree with the majority's position that an award of attorney's fees in this case would constitute the denial of access to the courts or punishment for bringing an unsuccessful lawsuit. Plaintiff was not denied access to the court: she was permitted to file and pursue her litigation. She was not punished for bringing an unsuccessful lawsuit; the award of attorney's fees was not a sanction imposed at the discretion of the trial court (e.g., *In re Marriage of Norton* (1988) 206 Cal.App.3d 53, 59 [253 Cal.Rptr. 354]). She was simply required to pay attorney's fees as a cost of bringing an unsuccessful lawsuit. This requirement is no different that requiring the losing party in a suit upon a contract containing an attorney's fees provision to pay such fees.

Requiring the losing party to pay reasonable attorney's fees and costs pursuant to statute is not a denial of access to the courts. Indigent litigants have access to the courts by way of fee waivers, not only to file their cases but also for other matters, including fee waivers for jury fees. I do not believe that enforcing a mandatory award of reasonable attorney's fees and costs will

have a chilling effect on litigation by indigent litigants. Moreover, I do not believe it is right to penalize a defendant who prevails in litigation into which he has been involuntarily thrust by preventing him from recovering what the Legislature has determined to be a just award.

Since the trial court failed to consider the relevant factors but arbitrarily awarded Amar Plaza no attorney's fees and costs based solely on Green's indigence, I would hold the award to be an abuse of discretion. (*Ohton v. Board of Trustees of California State University* (2007) 148 Cal.App.4th 749, 766 [56 Cal.Rptr.3d 111].) I would therefore reverse and direct the trial court to award Amar Plaza reasonable attorney's fees and costs, after considering the appropriate factors—which do not include Green's indigency—as set forth in *PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at pages 1095–1096.