Filed 10/6/21  Duncan v. Kihagi CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DALE DUNCAN et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>ANNE KIHAGI et al.,<br><br>        Defendants and Appellants. | A154678<br><br>(City and County of San Francisco  Super. Ct. No. CGC-15-545655) |

Respondents Dale Duncan and Marta Munoz Mendoza sued their former landlords for tenant harassment and wrongful eviction.  A jury awarded them damages, and this court affirmed in an unpublished opinion.  (*Duncan v. Kihagi* (Aug. 9, 2021, A153521) (*Duncan I*).)  In this appeal, the three landlords—Anne Kihagi, Christina Mwangi, and Zoriall LLC—challenge the amount of attorney fees the trial court awarded after entry of judgment.  We affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

We set forth the underlying facts of the case in *Duncan I* and need only briefly summarize them here.  Duncan and Mendoza lived together with their daughter in a rent-controlled apartment in a building on Hill Street in San Francisco.  Kihagi and Mwangi are members of Zoriall, which purchased the

1

Hill Street building in May 2014.  The landlords soon began taking away benefits that previously had been provided to the tenants; were uncommunicative, uncooperative, and hostile with the tenants; and eventually initiated wrongful owner move-in proceedings against the tenants, which forced them from their home about 14 months after Zoriall purchased the property.  Duncan and Mendoza spoke with a law firm, and the firm agreed to represent them on a contingent-fee basis.

Duncan and Mendoza sued the landlords in May 2015, when the couple were still living in their unit.  The original complaint (No. CGC 15-545655) included allegations that the landlords removed housing services and there were habitability defects in the tenants' unit.  The complaint alleged causes of action for nuisance; breach of contract; negligence; violation of San Francisco's Residential Rent Stabilization and Arbitration Ordinance (Rent Ordinance) (S.F. Admin. Code ch. 37, hereafter Admin. Code); and unfair business practices (Bus. & Prof. Code, § 17200 et seq.), apparently based on harassment under the Rent Ordinance.  A few days later the tenants filed an apparently identical first amended complaint, which was signed by a different attorney in the tenants' law firm.

Two other tenants of the Hill Street apartment building, Brian Smyth and Ben Hutchinson, retained the same law firm and also sued the landlords.  They filed their separate complaint in July 2015.

The landlords initiated two separate unlawful detainer actions against the tenants.  Those lawsuits were consolidated into this action but were never brought to trial.

The trial court's docket reveals that the parties engaged in extensive litigation over the following year.  Then in April 2016, the tenants filed a separate action (No. CGC 16-551512), this one alleging wrongful eviction in

2

violation of the Rent Ordinance as well as negligence. In July, the second lawsuit was consolidated with the first.

The parties litigated several discovery disputes, and the docket indicates that the trial court ordered the landlords to pay sanctions to the tenants' attorneys for discovery abuses.

Two months before trial was scheduled to begin, the trial court granted the tenants' request that this action be consolidated with the separate lawsuit by tenants Smyth and Hutchinson. But on the eve of the scheduled trial two months later, the court severed the Smyth/Hutchinson case from this action. The separate Smyth/Hutchinson case later settled and thus was never tried.

In early September 2017, the tenants filed a second amended complaint that combined the claims from both previous complaints but did not assert any substantive changes. This was the operative complaint, and it alleged causes of action for nuisance, breach of contract, negligence, violations of the Rent Ordinance, and unfair business practices. Ultimately, however, the jury was asked to consider only violations of the Rent Ordinance (wrongful eviction and harassment). The jury found in the tenants' favor and concluded that all three landlords had harassed the tenants and engaged in an unlawful eviction in violation of the Rent Ordinance.

Following post-trial motions and entry of an amended judgment that awarded the tenants $2.7 million, the tenants filed a motion for attorney fees. They sought a total of $981,480 for the work of two partners and two associates, and they asked for a lodestar enhancement multiplier of 1.5. In their motion, the tenants represented they were not seeking fees for the time spent on the discovery motions that led to the imposition of sanctions against the landlords. They also represented they were not seeking fees for their

3

work on the unlawful detainer actions or on the lawsuit brought by the other tenants, even though it had been briefly consolidated in this action.

In opposing the motion, the landlords argued that the tenants were not entitled to fees expended for work in connection with the five causes of action that were abandoned before trial (nuisance, breach of contract, negligence, habitability, and unfair business practices), the hourly rates sought were unreasonable, and the number of hours billed was excessive because of the tenants' efforts "to delay the litigation, manufacture meritless claims, and expand the scope of litigation beyond the two central contentions [pled] in the complaints."

Following a hearing, the trial court awarded attorney fees, and used the lodestar method to calculate the award "by multiplying the number of hours spent by the attorneys by an hourly rate that is reasonable under the circumstances." (*Northwest Energetic Services, LLC v. California Franchise Tax Bd.* (2008) 159 Cal.App.4th 841, 879.) The court reduced the requested hourly rates for one of the partners (to $550 from the requested $575) and one of the associates (to $425 from the requested $475), and it declined to apply a multiplier. It awarded a total of $910,752.50 in attorney fees to the tenants, reflecting a reduction of more than $70,000 in the lodestar amount they requested, and around sixty percent of the total they requested since the trial court declined to apply a 1.5 multiplier. The landlords appealed.

## II.
### DISCUSSION

The landlords do not dispute that the Rent Ordinance entitles prevailing parties to their reasonable attorney fees. (Admin. Code §§ 37.9(f) [attorney fees to prevailing party in wrongful-eviction action], 37.10B(c) [attorney fees to prevailing plaintiff in tenant-harassment action].) Although the parties' briefs in this appeal were filed before our decision in *Duncan I*,

4

the tenants' rights to attorney fees cannot now be seriously questioned in light of that decision's affirmation of the full jury verdict against the landlords. The landlords acknowledge that the award of attorney fees is reviewed for an abuse of discretion. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [appellate court will not disturb trial court's award unless it is " 'clearly wrong' "].) They contend that the trial court abused its discretion in several respects when calculating the award. We consider and reject all their arguments.

### A. The Trial Court Did Not Fail to Properly Apportion Attorney Fees Among the Tenants' Causes of Action.

The landlords first argue that the trial court should have declined to award attorney fees associated with five causes of action that were alleged but not tried to verdict. Framed this way, the tenants were successful on "only two" of their seven causes of action. In the trial court, the landlords argued that the tenants should thus receive only two-sevenths of their requested attorney fees.

On appeal, the landlords apparently no longer seek such a sharp reduction. They argue more generally that the trial court failed to analyze "whether the claims under the Rent Ordinance were so intertwined and overlapping that they could not be separated from the dismissed causes of action." (E.g., *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130 [attorney fees need not be apportioned when incurred for issue common to causes of action for which fees are recoverable and those which they are not].) But as the trial court observed, it is not as if the tenants lost on the five causes of action they did not present to the jury. Instead, it appeared that the tenants made a tactical decision to abandon those claims, possibly to streamline trial.

5

We agree with the tenants that the same underlying facts were the basis of all causes of action. As the tenants' counsel argued at the hearing on the fees motion, "There is no question that evidence was shown at trial as to the habitability problems, as to the failure to repair, as to the failure to manage the property, as to interferences and nuisances caused by the defendants. And all of that had to be investigated." The landlords misleadingly quote from the tenants' motion for attorney fees to make it sound as if the tenants "admitted" their dismissed claims were "separate and distinct," but the motion itself focused on the fact the tenants prevailed in full at trial despite not pursuing some theories of relief.

The landlords attempt to characterize the trial as having focused on "the very narrow issue of whether [the tenants] were harassed and unlawfully evicted from Hill Street in violation of the Rent Ordinance." Far from being a "narrow" issue, the tenants' claims required them to prove that the landlords acted in bad faith, as we explained in *Duncan I*. Even if the tenants had never pursued the theories that were ultimately dropped, counsel almost certainly would have conducted the same investigation, included the same witnesses at trial, and devoted a comparable time to trial preparation. The trial court thus did not abuse its discretion by somehow failing to allocate time among the tried and untried causes of action.[1]

[1] At the hearing on the motion, the tenants' counsel distinguished caselaw cited by the respondents where one court reduced an award of attorney fees by 10 percent even where there were interrelated claims. Counsel stated that "I would think that, you know, zero to five percent is a better number here because they were such interrelated claims." When it issued its final award the trial court referred to "the potential five percent overlap" and said it was making "slight reductions" in the award, apparently reflecting a slight reduction in the hours awarded. In any event, we agree with the trial court that the landlords' "2/7ths percentage is [not] the right analysis."

We likewise reject the landlords' argument that the trial court abused its discretion by supposedly failing to apportion time that was spent on the landlords' two unlawful detainer actions as well as the separate Smyth/Hutchinson actions. The tenants' motion specifically stated that the tenants were not seeking fees connected with those actions, and counsel repeated at the hearing on the motion that no fees were sought for any of the hours on the Smyth/Hutchinson action before consolidation. The landlords on appeal claim there is "substantial evidence that a significant portion" of attorney fees should have been apportioned among the consolidated actions because of a representation the tenants' counsel made at the hearing. According to the landlords, counsel "admitted" that "approximately 20% of the work performed during that period [when the Smyth/Hutchinson action was consolidated with this one] was potentially attributable to the Smyth Actions." But the landlords omit the context of counsel's statement. What counsel said was that "[o]bviously after consolidation there was some work that went into, for example, the trial brief that described the Smyth/Hutchinson claims. There were a couple of in limine motions, but we're talking about *maybe 20 percent of the work for a one-month period of time* that might have been attributed. And that was reasonably necessary given the stature of the case at that time." (Italics added.) This is hardly an admission that a "significant portion" of the requested award should have been reduced, and the trial court did not abuse its discretion in declining to significantly reduce the hours awarded.

The landlords rely in their reply brief on *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, but their reliance is misplaced. In *Mann*, the court reduced an award of attorney fees to parties who had partially prevailed on an anti-SLAPP motion (Code Civ. Proc., § 425.16)

7

because the trial court had failed to exclude fees attributable to causes of action that remained in the litigation after the motion. (*Mann* at pp. 345, 347.) In other words, since the prevailing parties had achieved only "limited success," the trial court should have awarded "only that amount of fees that is reasonable in relation to the results obtained." (*Id*. at p. 343, italics omitted.) Here, the tenants prevailed in full at trial, and they did so regardless of the fact that they ultimately decided not to proceed under every theory they had originally alleged. The landlords have not established an abuse of discretion by the trial court.

### B. The Landlords Make No Showing that Attorney Fees Were Awarded for Excessive Hours Spent on Litigation.

The landlords next accuse the tenants of employing a "wasteful litigation strategy" and argue that the trial court abused its discretion "by not determining whether the 1,888.4 hours of attorney time spent on an eviction action involving one residential unit was reasonable." (Italics and capitalization omitted.) But again, the trial court in fact *did* reduce the hours awarded, albeit slightly, to account for the possible overlap in time spent on the Smyth/Hutchinson matter, showing it did weigh the reasonableness of the hours requested.

The landlords argue that the tenants expanded the scope of a simple eviction matter by calling supposedly unnecessary or improper witnesses, such as tenants of other buildings owned by the landlords. But in *Duncan I* we sanctioned the tenants' reliance on these witnesses. And while the landlords point to isolated motions brought by the tenants' counsel that supposedly delayed the litigation, the trial court of course was in the best position to evaluate the reasonableness of the tenants' litigation tactics,

8

especially in light of whether they were reasonable in response to the landlords' own litigation strategy. Again, we find no abuse of discretion.

*C. The Tenants' Evidence Supported the Award of Attorney Fees.*

The landlords next claim that the billing entries submitted by the tenants' attorneys did not support the requested fees. We again disagree.

True enough, the prevailing party seeking attorney fees bears the burden of establishing entitlement to an award and documenting the hours spent and proper hourly rates. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320.) But "California law does not require detailed billing records to support a fee award; '[a]n attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records.'" (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 263.) "Furthermore, '[a]n award for attorney fees may be made in some instances solely on the basis of the experience and knowledge of the trial judge without the need to consider any evidence.'" (*Id.* at p. 264.) And if a party does not object to the adequacy of documentation submitted to the trial court, the challenge to the adequacy of the evidentiary basis for an award of attorney fees is forfeited. (*Id.* at p. 264, fn. 9.)

With these standards in mind, the landlords' complaints about isolated billing entries submitted by the tenants' attorneys fall far short of establishing that the trial court abused its discretion in awarding attorney fees. The landlords claim that some entries were "vague and lack[ed] substance," but they do not show that the trial court was unable to reasonably rely on them. And the landlords elsewhere complain that some billing entries were "particularly troublesome" because they "use[d] the stock phrase 'communications with clients' . . . without any attempt at describing

9

the communications and why they were necessary," wrongly suggesting that the tenants were required to divulge attorney-client communications in order to recover attorney fees.

Having again failed to establish that the trial court's award was clearly wrong, we reject the landlords' arguments.

*D. The Trial Court Did Not Abuse Its Discretion in Setting Attorneys' Hourly Rates.*

The landlords next argue that the trial court abused its discretion when it set the hourly rates of attorney Ariel Gershon at $425 and attorney Kenneth Greenstein at $525. We again are not persuaded.

1. Additional Background.

Gershon submitted a declaration in support of the tenants' request for attorney fees. He attested that he had been a practicing attorney since 2006 and had worked since 2007 as an associate attorney at the law firm representing the tenants. Gershon further declared that his hourly rate was $475. The landlords' opposition argued that this hourly rate was excessive. The landlords noted that Gershon previously had submitted declarations in connection with sanction requests stating that his hourly rate was $400. In reply, the tenants represented that Gershon's rate had increased and that the previous rate was what was claimed in connection with discovery motions. At the hearing on the motion, a partner at Gershon's law firm stressed that $475 was actually low for Gershon because he (the partner) would pick him over "any lawyer in this town" to try a case and he was "one of the top attorneys in the City bar none." The partner also stressed that he had not had to hire an outside tech firm at a cost of tens of thousands of dollars because "Mr. Gershon did it with his iPad while cross-examining a witness,

10

and he was better than anybody at it."  The trial court ultimately set Gershon's hourly rate at $425.

As for Greenstein, his declaration in support of attorney fees stated that he was the founding partner of the law firm representing the tenants and was their lead attorney of record.  He described previous lawsuits he had managed, and he attested that his hourly rate was $525.  Greenstein further attested that the last time he had been awarded attorney fees was nearly three years earlier, when he was awarded an hourly fee of $475 by a different trial court judge.  In opposition, the landlords noted that the current requested rate was 10 percent above what had previously been awarded and that $525 was "excessive and far beyond reasonable rates for attorneys with comparable experience practicing landlord-tenant law in San Francisco."  They compared his hourly rate to that of the $217 rate claimed by a deputy city attorney in the Office of the City Attorney in litigation against Kihagi, as well as the $400 hourly rate claimed by an attorney representing a plaintiff in a different lawsuit against Kihagi.  In reply, the tenants pointed out that the deputy city attorney was a public employee whose rates are set by the government, and the private attorney cited by the landlords had years of experience but had "little to no experience with major and complex litigation in the landlord-tenant area."  The trial court accepted Greenstein's requested hourly rate of $525 after consideration of "comparable awards [and] comparable billing amounts throughout our court from my own experience from very experienced counsel."

2.  Analysis.

On appeal, the landlords again acknowledge that the " 'experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to

11

review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' " (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) But they first contend that the trial court abused its discretion by setting Gershon's hourly rate at $425 because the rate "lack[ed] any proper basis." They summarize the conflicting evidence presented below but do not establish that the trial court was clearly wrong when it concluded that the rate was consistent with its own experience.

The landlords claim that the tenants' "silence" on why Gershon's claimed rate increased from when he sought fees in connection with sanctions motions was "alarming." In fact, at the hearing Gershon himself explained that "I've been claiming during the course of this case as part of discovery motions a rate of $400, which I think is appropriate for discovery-motion work," whereas the fees they were requesting after trial were for "the work we did in prep for trial and for all the things that were not claimed in discovery motions," and that under the circumstances his requested rate was reasonable. The trial court was in the best position to consider this explanation, and we find no abuse of discretion under the circumstances.

We also reject the landlords' argument that the trial court abused its discretion by accepting Greenstein's claimed hourly rate of $525. Again, they cite to the conflicting evidence presented below but do not establish that the trial court erred. They contend that Greenstein's work on the case apparently was limited to "the simple task of preparing jury instructions," a somewhat ironic complaint given that the landlords proposed 22 special jury instructions of their own and argued in *Duncan I* that the failure to give four of them amounted to reversible error. The trial court was in the best position to evaluate the reasonableness of time devoted to litigating jury instructions, and we find no reason to set aside the court's award.

*E. The Size of the Attorney Fee Award Was Not an Abuse of Discretion.*

Finally, the landlords argue that the trial court "made no effort to determine whether the fee award resulted in double recovery" for the tenants or the attorneys and did not "consider whether the fee award would result in financial ruin" for the landlords. Once again we are not persuaded.

The landlords complain that because the contingency-fee agreement between the tenants was never presented to the trial court, the court had no basis to determine the reasonableness of the award of fees. But they cite no authority for the proposition that recovering plaintiffs be required to produce such a confidential document. And the case they do cite regarding contingency-fee contracts holds that "a trial court may consider the terms of [a contingency-fee] contract, along with other factors, but . . . the terms of the contract *do not compel any particular award.*" (*Vella v. Hudgins* (1984) 151 Cal.App.3d 515, 520, italics added.) Such a contract "is some evidence of the value of an attorney's services, but as with other items of evidence, it is not controlling." (*Id.* at p. 521.) Moreover, *Vella* was decided before the enactment of Business and Professions Code section 6149, which provides that a written fee contract is considered a confidential communication.

We also reject the landlords' argument that the trial court abused its discretion by not considering the "financial impact" of the award of attorney fees. The only case they cite in support of this argument actually reversed a trial court's decision not to order an indigent plaintiff to pay attorney fees. (*Garcia v. Santana* (2009) 174 Cal.App.4th 464, 467.)

Because the landlords have again failed to demonstrate that the trial court abused its discretion, we reject their arguments.

13

## III.
### DISPOSITION

Appellants' unopposed September 11, 2019 request for judicial notice is granted.

The order awarding attorney fees is affirmed.  Respondents shall recover their costs on appeal.

_____

Humes, P.J.


WE CONCUR:



_____

Margulies, J.



_____

Banke, J.


_Duncan et al. v. Kihagi et al._  A154678